Stevenson *v.* Williams et ux., Appellants.

Argued September 11, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Alexander A. Notopoulos*, with him *Martin Goodman*, and *John H. Hemphill*, for appellants.

No argument was made nor brief submitted for appellees.

OPINION BY GUNTHER, J., November 14, 1958:

This appeal is from a final decree dismissing exceptions to a decree nisi.

Appellants own and reside at 210 Aldrich Avenue, Altoona, Blair County, Pennsylvania, being lot No. 76, section 3 in the Llyswen plot. Appellees own and reside at 208 Aldrich Avenue, being lot No. 77 in the same plot. Between 210 and 208 a 12 foot driveway

is located which occupies 7 feet of lot 76 and 5 feet of lot 77.

In 1923 Harry G. Martin and Ruth Martin owned and built a house on lot No. 77. In 1925 Percy J. Williams and Violet M. Williams, owned a lot and built a house on lot No. 76. Harry G. Martin died December 8, 1944 and Ruth Martin conveyed title to lot 77 to Dr. and Mrs. Spencer W. Hurst. Dr. Spencer W. Hurst and his wife conveyed title to lot 77 to George W. Stevenson, Jr. and Francis L. Stevenson. On or about November 19, 1956, appellants began to construct a carport on their lot, and appellees obtained a preliminary injunction which was made permanent on May 29, 1957. The record discloses that the Martins began using the driveway from 1923. On or about 1936, the appellants also began using the driveway.

Mrs. Martin, as stated above, sold lot 77 and the premises known as 208 Aldrich Avenue to Dr. and Mrs. Spencer W. Hurst on April 25, 1945, without mentioning the driveway. The Hursts continued to use the driveway as a passageway from the time they purchased the premises until they sold to the Stevensons. About 1951 or 1952 the Williams and the Hursts blacktopped the greater portion of the driveway and divided the costs, 7/12 being paid by the Williams and 5/12 by the Hursts.

The carport when completed will occupy approximately ½ of the width of the driveway. It is upon this seven foot strip of their own land that the appellants have begun the construction. This erection would interfere with the use of the driveway by the Stevensons.

The Stevensons base their petition for an injunction and their claim to the right of unobstructed use of the entire driveway on the law of adverse user in themselves and their predecessors in title for over twenty-one years.

Appellants contend, however, that the use of the driveway was not adverse or hostile but permissive.

Mrs. Martin, one of the predecessors in title, stated that she never understood her use of the driveway to be other than permissive. The following testimony of Mrs. Martin is worthy of note:

"Q. And do I understand during the entire period of 20 years that you lived adjoining Mr. and Mrs. Williams that you folks just used the driveway together? A. That is right. Q. Do I understand you never at any time was using it contrary to the wishes of the Williams family? A. Absolutely not. Everything was all right." Mrs. Martin also testified that her use of the driveway was abandoned shortly after her husband died on December 8, 1944. She conveyed the property on April 25, 1945.

Dr. Spencer W. Hurst testified that he did not use the driveway against the wishes of Mr. Williams.

"Q. You were using it as far as you were concerned with his (Williams) permission? A. Yes, sir. Q. Did you consider at any time, Doctor, that your use of the driveway was adverse to Mr. Williams? A. Certainly not." Dr. Hurst further testified that he discussed the problems of maintenance and construction of the driveway amicably with the Williams and that he was using the driveway with their permission. Had Dr. Hurst considered himself an adverse user it would not have been consistent for him to enter into an agreement as to the division of costs of the blacktopping.

In case of a right of way the right must not only have been enjoyed without interruption for 21 years, but that enjoyment must have been adverse to the rights of the owner of the land, in order to give title. *Shinn et al. v. Rosenberger*, 347 Pa. 504, 32 A. 2d 747. If the use was merely permissive, as the testimony seems to indicate, and not in any sense hostile or ad-

verse, the claim of the appellees to a prescriptive right must be rejected.

To require a right or easement by prescription, the evidence and proof thereof must be clear and positive: *Pittsburgh and L.E.R.R. Co. v. Stowe Township,* 374 Pa. 54, 59, 96 A. 2d 892. The user must be adverse, open, notorious, and uninterrupted. The evidence in instant case is clear that the use of the driveway was for mutual accommodation of both owners and the user of neither was adverse to the other and no title was acquired by means of it. This case is distinguishable from the case of *Hatalowich v. Nagy,* 182 Pa. Superior Ct. 192, 126 A. 2d 109, where the use of the roadway had been in existence for a period of almost 56 years without permission. The use had been continuous and uninterrupted up until 1953 when a barricade was erected preventing free passage. The evidence there supported the chancellor's finding of fact, establishing adverse use of the roadway. The evidence in the case before us supports the finding that permission was granted for the use and that an agreement between the Williams and the Martins existed as to the use of the driveway.

A review of the record discloses a failure on the part of the appellees to prove adversity and hostility. There is clear proof of permission.

We are inclined to agree with the appellants that the decree of the lower court cannot be sustained under our Appellate Courts' decisions. Before the title of a landowner may be encumbered by an easement, the court must have clear proof that the prescriptive rights have been established by a user with hostile intent and not through indulgence, permission or mutual accommodation. The use of this driveway began and continued as a result of friendly and accommodating permission of the appellants.

In view of the disposition of the matter we see no need to discuss the second question involving the admissibility of the deed.

Decree of the lower court is reversed.