### Genoa v. Liberatoschioli

*William P. Culp, Jr.*, for plaintiff.
*Barry S. Yaches*, for defendants.

SURRICK, *J.*, September 5, 1980—Have plaintiffs acquired a valid easement by prescription?

## FINDINGS OF FACT

1. Plaintiffs are individuals who own and reside at premises known as 172 Powell Lane, Upper Darby, Delaware County, Pa.

2. Plaintiffs purchased 172 Powell Lane from Mathilde Baney on December 27, 1966 and have resided therein since that time.

3. Mathilde Baney purchased 172 Powell Lane on March 20, 1956 from John J. McGarry and Kathaleen V. McGarry, Mathilde Baney's brother and sister-in-law. However, Mathilde Baney lived at 172 Powell Lane from 1948 until December 27, 1966, at which time she sold the said premises to plaintiffs.

4. Defendants are individuals who own and reside at premises known as 168 Powell Lane, Upper Darby, Delaware County, Pa.

5. Defendants purchased 168 Powell Lane from Anna Coyle, a widow, on August 31, 1979.

6. Anna Coyle and John W. Coyle purchased 168 Powell Lane on September 19, 1956 and resided therein until the death of John W. Coyle on September 3, 1970. After the death of John W. Coyle, Anna Coyle continued to reside at 168 Powell Lane until the premises were sold to defendants.

7. Plaintiffs' property is located immediately adjacent to defendants' property to the north. The properties are connected by adjoining driveways which run generally east and west. These separate driveways which run side by side for most of the length of the properties, intersect with Powell Lane at one end and lead to separate garages at the other end. Plaintiffs' driveway, however, from the point where it intersects with Powell Lane and for approximately one-half of its length, is too narrow to accommodate an automobile or to provide ingress and egress to plaintiffs' garage by automobile without crossing onto defendants' property.

8. Because plaintiffs' driveway is too narrow to accommodate a motor vehicle plaintiffs and their predecessor in title, Mathilde Baney have used part of the driveway located on the property of defendants and their predecessors in title in order to gain ingress and egress to their driveway and garage by automobile.

9. Plaintiffs and their predecessor in title, Mathilde Baney used a portion of defendant's driveway from 1948 until 1979 on a daily basis, a period in excess of 21 years, for the purpose of ingress and egress of their motor vehicle to their driveways and garage.

10. The condition which necessitated the use by plaintiffs and their predecessors in title, of defendant's driveway for ingress and egress is accurately depicted on Exhibits P-3, P-4 and P-5, which were admitted into evidence at the hearing held on April 23, 1980.

11. Plaintiffs and Mathilde Baney never asked the Coyles, defendants' predecessor in title, for permission to use the Coyle's driveway for the purpose of ingress and egress to their driveway or garage and the Coyles never did anything to lead plaintiffs or Mathilde Baney to believe that they were granting plaintiffs or Mathilde Baney permission to use their driveway nor did they ever object to this use.

12. Plaintiffs and Mathilde Baney never discussed with the Coyles the use of the driveway. They simply used it as they pleased.

13. The relationship between plaintiffs and their predecessor in title and the Coyles, defendants' predecessor in title, was a friendly relationship of mutual accommodation. Each would accommodate use by the other of the driveway area.

14. Plaintiffs and Mathilde Baney knew that in order to have ingress and egress to their driveway and garage they must drive on the property owned by defendants and their predecessors in title. Defendants' predecessors in title, also used part of plaintiffs' driveway while gaining ingress and egress to their own driveway and garage.

15. Between 1948 and 1956 Mathilde Baney never asked nor received permission from the owners of 172 Powell Lane to use the driveway for that property for ingress and egress of her automobile to her driveway and garage and the owners of 172 Powell Lane never objected to her use during that period of time.

16. Prior to purchasing the property in August of 1979, defendants inspected the premises on a number of occasions.

17. As a result of these inspections and before going to settlement on August 31, 1979, defendants were concerned about the configuration of the driveways and inquired of their attorney about the situation. Defendants, however, did not inquire of plaintiffs about the driveway situation before going to settlement.

18. After purchasing 172 Powell Lane on August 31, 1979, defendants advised plaintiffs that plaintiffs could not use defendant's driveway to gain ingress and egress for their motor vehicle to their driveway and garage.

19. There was never any agreement between plaintiffs, Mathilde Baney and the Coyles regarding repairs to the driveway. On at least one occasion, there were cracks in the driveway which Mrs. Vail repaired herself without seeking any reimbursement from the Coyles for the expense.

## DISCUSSION

One of the earliest pronouncements by the Supreme Court of Pennsylvania on the subject of prescriptive easements can be found in the case of Garrett v. Jackson, 20 Pa. 331 (1835). In that case, the court stated at page 335:

"This was an action for disturbing the Plaintiff's right of way over the Defendant's land. Whether such right existed was the only question . . .

A passage by one man over the land of another, with the special permission of the owner on every occasion of its use, will not raise a presumption of a grant, no matter how often it may occur, nor how long continued. So a license to use the road for a certain defined period, and the enjoyment of it

under such license will give no right after the expiration of time. But where one uses an easement whenever he sees fit, without asking leave, and without objection, it is adverse, and an uninterrupted adverse enjoyment for twenty-one years is a title which cannot be afterwards disputed. Such enjoyment, without evidence to explain how it began, is presumed to have been in pursuance of a full and unqualified grant. The owner of the land has the burden of proving that the use of the easement was under some license, indulgence, or special contract inconsistent with a claim of right by the other party."

More recently, the Supreme Court has again defined the law which governs the issues which are now before this court. In the case of Stiegleman v. Pennsylvania Yacht Club, 432 Pa. 111, 246 A. 2d 116 (1968), a case involving a dispute over the use of a driveway which was used by plaintiff and her predecessors in title as the sole means of ingress and egress from the buildings on plaintiffs' property, the court observed at page 113:

"The evidence clearly establishes that Caroline Stiegleman and her predecessor in title used this driveway uninterruptedly and continuously since 1917 without any objection by the Pennsylvania Yacht Club and its predecessors in title until it was blocked in 1957. Such evidence, without more, established prima facie the adverse nature of the use and raised the presumption of an unqualified grant. Wampler v. Shenk, 404 Pa. 395, 172 A. 2d 313 (1961). To rebut this presumption, the burden of showing that the driveway was used under permission or contract not consistent with adverse use was on the owner of the servient tenement, the Pennsylvania Yacht Club. Garrett v. Jackson, 20 Pa. 331 (1853); Elias v. Scott, 164 Pa. Superior Ct.

329 64 A. 2d 508 (1949); Steel v Yocum, 189 Pa. Superior Ct. 522, 151 A. 2d 815 (1959)."

In 1977, the Superior Court of Pennsylvania in the case of Adshead v. Sprung, 248 Pa. Superior Ct. 253, 375 A. 2d 83 (1977), faced a factual situation which is remarkably similar to the case at bar. In Adshead as in the instant case, the parties were next door neighbors; separate driveways on each of the properties ran side by side for most of the length of the properties and lead to separate garages; plaintiffs' driveway, however, was too narrow to permit access to plaintiffs' garage and plaintiff, therefore, for more than 21 years, has used part of defendant's driveway to gain ingress and egress to his garage. The only difference factually between Adshead and the instant case is that Adshead, defendants put a fence down the property line between the driveways, thereby preventing plaintiff from gaining access to her garage. In this case defendants merely told plaintiff not to use their driveway. The lower court in Adshead found that plaintiff had acquired a prescriptive easement in the common driveway area and enjoined defendant's obstruction of the easement by the fence. The Superior Court citing Garrett v. Jackson, supra, affirmed.

Defendants in Adshead as in the instant case relied on the case of Stevenson v. Williams, 188 Pa. Superior Ct. 49, 145 A. 2d 734 (1958) and contended that plaintiffs and their predecessors in title were using their land by permission or by neighborly accommodation and not adversely. The court discussed these contentions as follows at page 257.

"Appellants also contend that adversity was lacking in the use of the common driveway area. Citing Stevenson v. Williams, 188 Pa. Superior Ct. 49, 145

A. 2d 734 (1958), they allege that use of the land in question was based on mutual neighborly accommodation. In Stevenson, supra, plaintiffs and their predecessors in title used a twelve foot wide driveway between their land and defendants for more than twenty-one years. When defendants began construction of a carport that would occupy half of the driveway area, plaintiffs sued for an injunction, alleging that they had acquired prescriptive rights in the land. The Chancellor granted injunctive relief, but this Court reversed, agreeing with defendants that use of the driveway was not adverse or hostile, but permissive. Key testimony by plaintiff's predecessors in title indicated that they used the driveway with defendant's permission, and not contrary to defendants' wishes. Permission was further indicated in Stevenson by the fact that plaintiffs immediate predecessor in title entered into an agreement with defendants to share the costs of blacktopping the driveway in proportion to that part of the driveway area owned by each party. There is no such evidence of permission in the present case. To the contrary, appellee testified that she never asked or received permission from appellants or their predecessors to use the driveway; her testimony was clear that she used the land in question as she pleased, without permission."

In this case like Adshead, but, unlike Stevenson, there is no testimony by either of plaintiffs or their predecessor in title that they were using the driveway by permission. On the contrary plaintiffs and plaintiffs' predecessor specifically testified that there was no discussion of their using the driveway with defendant's predecessor in title and that they never asked for or received permission for their use.

Also unlike the Stevenson case, supra, there was no evidence that either plaintiffs or their predeces-

sor had reached an agreement as to maintenance or repair of the driveway. Again, on the contrary the evidence here establishes that Mrs. Vail, on her own, repaired the driveway without asking permission or demanding compensation from anyone.

In the instant case, the testimony of both plaintiffs and plaintiffs' predecessor in title is clear and uncontradicted that they used a driveway, which is partly located on defendants' land, to gain ingress and egress to their garage for their respective motor vehicles whenever they pleased. They did so on almost a daily basis for a period exceeding 21 years and they used the property without seeking permission, without being granted permission and without objection.

In relying on Stevenson defendants specifically point to the following language in that decision on page 53 as support for the proposition that plaintiffs have not met their burden of proof. "Before the title of a landowner may be encumbered by an easement, the court must have clear proof that the prescriptive rights have been established by a user with hostile intent and not through indulgence, permission or mutual accommodation."

Defendants seem to contend that the friendly relationship of mutual accommodation between plaintiffs and defendants' predecessor in title, the Coyles, along with the fact that the Coyles never objected to plaintiffs' use of the property shows that there was no hostile intent and that plaintiffs have, therefore, failed to meet their burden. We can only observe that under the great weight of authority the intent of the person seeking to assert the right to a prescriptive easement is only relevant as it may relate to or reveal the existence of factors which would establish that the property was being used by permission or in some manner which would not be

adverse to the owner. If the evidence reveals that the intent of the person seeking the prescriptive right is neutral, as in the instant case where plaintiffs testified that they never really thought very much about the use of the driveway and merely assumed that they had the right to use it as a common driveway while at the same time knowing that they were using property owned by defendants or if the record is completely silent on the issue of intent, such would not preclude the creation of an easement by prescription after 21 years, absent proof of permission or some other factor which would negate the element of adversity. All that the law requires of plaintiff is proof of a use adverse to the record holder. Such proof satisfies whatever intent may be required by the language employed by the Stevenson court.

Plaintiffs have established that they used this land without seeking or being granted permission from defendant's predecessors in title for more than 21 years and that they used it as they pleased, within the frame work of neighborly accommodations. Under these circumstances, plaintiffs have established prima facie the adverse nature of the use and raised the presumption of an unqualified grant. To rebut this presumption the burden of showing that the driveway was used with permission or in a way not consistent with adverse use is on defendants. Defendants have not satisfied that burden.

The issue as to what is the difference between a "permissive" and an "adverse" use and how far a defendant must go to establish permission thereby rebutting the presumption of an easement was squarely before the Supreme Court in Fec v. Mickail, 438 Pa. 439, 265 A. 2d 800 (1970). The court's analysis of the evidence was as follows:

"The only support for Appellant's position is in the testimony of Anna Fec, who was seventy years old at the time of the trial, that she and her husband has used the pathway because they had been told by their predecessors in title that they were "permitted" to do so. To rebut this argument, it would suffice to point out that: (1) Mrs. Fec is not an attorney and certainly did not intend to speak of "permission" in the legal sense, and (2) the information as to "permission" was conveyed to them by the previous owners of their property, not the owners of the servient land. Aside from these two points, however, Mrs. Fec *did* testify, on cross-examination, that they used the pathway because they felt they had a *right* to use it.

Q. You relied on what Marsicos told you, and from what Marsicos told you, you felt you had a right to use it, is that right?

A. Yes.

Q. Whoever owned it didn't interfere, is that right?

A. No.

Q. Until 1945. After 1945, did you continue using it when somebody told you you shouldn't?

A. Because nobody tried to stop me, I figured I had the right. I was told after 21 years that I had a right to use the driveway, that nobody can bar the gate to the driveway after 21 years." (Emphasis supplied.)

The court in Fec concluded that there was sufficient evidence to sustain the finding of the chancellor that plaintiff had established the elements of an easement by prescription and that defendant had failed to rebut with adequate evidence of "permission."

Finally, as the court pointed out in Stiegleman at

Page 115 in assessing the sufficiency of evidence to rebut the presumption of a grant:

"In Pierce v. Cloud, 42 Pa. 102 (1862), declarations of a predecessor in title of the one asserting the prescriptive right to the effect that he enjoyed the right of way by sufferance and that he had obtained from the owner of the land over which the right of way was located assurance that he would not be shut in were held insufficient to overcome the presumption of a grant."

The evidence to which defendants point to rebut the presumption in the instant case is at best evidence of mere sufferance. Such evidence by defendant is insufficient to carry defendant's burden of showing that the use was by permission or license.

Defendants also argue that even if a prescriptive easement has been established that said easement is not valid against them as subsequent bonafide purchasers. This argument is based on a unique interpretation of Pennsylvania real estate laws found in one trial court opinion, Freedman Cleaners, Inc., v. Myers 34 D. & C. 2d 306 (1964).

"Recognition of an easement by prescription is based on the presumption of a lost grant, the presumption arising out of 21 years of adverse use: Farmers' Northern Market Company v. Gallagher, supra; Pierce v. Cloud, 42 Pa. 102 (1862). Such an unrecorded grant is fraudulent and void against any subsequent, bona fide purchaser for value: Act of March 18, 1775, 1 Sm. L. 422 sec. 1, as amended May 19, 1893, P.L. 108, sec. 1, 21 P.S. sec. 444."

While it is true that the theory of prescriptive easement is based on a constructive "grant" by the landowner to the user, the reality is that such an

easement is a court created interest in land. Thus, it does not mature and logically cannot be recorded until a court decrees such rights into existence. To void an otherwise valid easement by prescription because it has not been recorded is to put the cart before the horse. We can find no appellate authority to support the holding in Freedman and we find the logic of that decision singularly unconvincing. Moreover, in the instant case, defendants had notice of this problem before purchasing the property.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction over the parties and the subject matter.

2. Plaintiffs and their predecessor in title have used the driveway on defendant's land in a manner which has been open, notorious, adverse and continuous for a period in excess of 21 years.

3. Plaintiffs have established that they are entitled to an easement by prescription over the driveway located on defendant's property, for the purpose of gaining ingress and egress by automobile to this driveway and garage.

## DECREE NISI

And now, September 5, 1980, it is ordered, adjudged and decreed that plaintiff's request for injunctive relief is granted and defendants are enjoined from obstructing or interfering with the use and enjoyment by plaintiffs of the easement across defendant's property which plaintiffs have acquired by prescription.