**Cohen v. Quarry Estates L.L.C.**

C.P. of Philadelphia County, March Term 2004, no. 3780.

*Stanley R. Krawkower,* for plaintiffs.
*Daniel E. Rhynhart,* for defendant.

RIZZO, *J.,* October 27, 2006—Plaintiffs, David Cohen et al., appeal from an order of this court of March 17, 2005, which granted reconsideration and vacated paragraph (1) of its February 17, 2005 order, effectively revoking the pedestrian easement, but reaffirmed paragraphs (2) and (3) permitting defendants to continue construction on their property, and denying plaintiffs' request for an easement to park on the property of the defendants.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs are residents of Elfreths Alley, the neighboring street to the rear of the plot of land owned and developed by defendant Quarry Estates L.L.C. The property in question was formerly the parking lot of Casani Candy, a business which had been located there from 1973 until November of 2001. (Plaintiffs' brief for in-

junction.) Plaintiffs assert that they parked their cars in the parking lot of Casani Candy and also used the lot for pedestrian ingress and egress between their homes and Quarry Street before the property passed to defendants, who are currently constructing town homes on the property.

Plaintiffs filed a petition for special injunction (temporary restraining order) on March 19, 2004, asserting that they have established a pedestrian easement of approximately four to seven feet north of plaintiffs' rear north property line, and a pedestrian passageway "to the east of defendant's western property line" which would provide plaintiffs with access to Quarry Street. Plaintiffs asked the court for a special injunction before hearing, a temporary injunction after hearing, and ultimately a permanent injunction. (Complaint.) Not until November of 2004, after previous stipulation by the parties, did plaintiffs file an amended complaint to include their claim for a parking easement on defendant's property. (Amended complaint.)

Following briefing and extensive hearings on both matters, this court on February 17, 2005 issued an order,[1] which in paragraph (1) granted plaintiffs, as requested in the complaint, a pedestrian easement in the area "contiguous to the rear of plaintiffs' properties, and along the westerly side of defendant's properties, leading to and from the passageway at the rear of the plaintiffs' properties, providing plaintiffs access to and from Quarry Street." The order also permitted defendant to continue

---

1. Attached as exhibit "A" [not published herein].

construction on the property and prohibited plaintiffs from parking on the property.

Following this order, both parties requested reconsideration from the court concerning paragraph (1) of the order, due to the fact that defendant had already completed construction of a town home that abutted the westerly property line, making an easement to Quarry Street impossible. Plaintiffs asked this court to amend the order to instead grant an easterly easement. Defendant objected to this request, as an easterly easement would interfere with the construction of a fifth townhouse, and would conflict with the February order's grant of permission to continue construction on the property.

Following oral argument, on March 17, 2005, this court issued an order[2] which vacated paragraph (1) of the order of February 17, 2005, and upheld the remainder of the February order. The intention of this court in vacating paragraph 1 was to allow further proceedings on the pedestrian easement issue, after which time a final order on that matter would be rendered. Instead, on April 18, 2005, plaintiffs filed a timely appeal with respect to the entire March order. At the direction of this court's order of April 21, 2005, appellants filed a statement of matters complained of on appeal on May 3, 2005. On appeal, plaintiffs asserted that this court committed error in its March 17, 2005 order which vacated paragraph (1) of its order of February 17, 2005, which granted plaintiffs a pedestrian easement, and that this court further committed error by upholding in its March order paragraphs (2) and (3) of the February order, which permitted de-

---

2. Attached as exhibit "B" [not published herein].

fendant to continue construction on the property, and which denied plaintiffs permission to park their vehicles on any part of the subject property at any time. On November 18, 2005, this court filed an opinion in the instant matter, pursuant to Pa.R.A.P. 1925(a). On August 28, 2006, the Superior Court issued an order[3] remanding the case to this court for the purpose of drafting an opinion to explain in detail what claims or parties remain, so as to support the rationale of this court's opinion that the order in question is not a final order and to further explain the rationale for both vacating paragraph 1 of the February order, and denying any other form of relief.

## LEGAL DISCUSSION

### Preliminary Injunction

The standard for a preliminary injunction is outlined in Pa.R.C.P. 1531 as follows:

"The prerequisites for issuing a preliminary injunction are: first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. Even more essential however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be

---

3. Attached as Exhibit "C" [not published herein].

awarded." *Wilkensburg Education Association v. School District of Wilkensburg,* 542 Pa. 335, 337-38 n.2, 667 A.2d 5, 7-8 n.2 (1995), (quoting *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 392 A.2d 1383 (1978)). Applying these prerequisites to the instant case: Plaintiffs have not established that they will suffer irreparable harm by no longer being able to park on defendant's property. Their loss of free parking spaces can be easily compensated by monetary damages. Greater injury will most certainly occur to defendants if they are required to stop construction on their property and allow it to be used only for defendant's convenience. Most importantly, the plaintiffs have failed to establish their entitlement to a parking easement on defendant's lot, and that defendant's conduct in improving their property is therefore wrongful.

### Pedestrian Easement

Plaintiffs' original complaint in equity, filed in March of 2004, asserted that plaintiffs had established and were entitled to a pedestrian easement "across a portion of the rear of defendant's property . . . and to an easement passageway to the east side of defendant's westerly boundary." (Complaint.) Despite this court granting plaintiffs' request for an easement exactly as stated in their complaint, an easement along defendant's western boundary leading to Quarry Street has become a factual impossibility.[4] Defendant, by December of 2003, had already de-

---

4. Plaintiffs in fact filed an amended complaint on November 24, 2004 to include their claim for a parking easement. At this time, plaintiffs' erroneous request for a westerly pedestrian easement remained unchanged.

veloped its property to the western edge of its boundary line, after beginning substantial excavation in July of 2003. (Testimony of Ronald Kushner, 10/29/2004, p. 66.) By all indications, had this court had the opportunity to preside over further proceedings, the result would have been the ultimate denial of plaintiffs' requested relief. Therefore, this court recommends that plaintiffs' prayer for relief with respect to the pedestrian easement be denied, or in the alternative, remanded to this court for a determination on the merits.

## Parking Easement

Plaintiffs assert that this court committed error by failing to find that they have a prescriptive easement for parking on defendant's property. The February 17 order denied plaintiffs' request for a parking easement, and also permitted defendant to continue construction on the property. The March 17 order upheld these provisions.

Plaintiffs' requested relief in the form of a parking easement was properly denied, because plaintiffs failed to demonstrate the necessary elements to establish a prescriptive easement. A prescriptive easement is the right to the use of another's property which is acquired by "adverse, open, continuous, notorious and uninterrupted use of the land for [a period of] 21 years." *Moore v. Duran,* 455 Pa. Super. 124, 132, 687 A.2d 822, 826 (1996). The burden of proving a prescriptive easement is on the party seeking to enforce it. *Keefer v. Jones,* 467 Pa. 544, 548, 359 A.2d 735, 739 (1976). In order to acquire an easement by prescription, the evidence and proof thereof must be clear and positive. *Adshead v. Sprung,* 248 Pa. Super. 253, 256, 375 A.2d 83, 84 (1977).

Plaintiffs Cohen and Bradley, who have not themselves resided on Elfreths Alley for the required 21-year period, could nonetheless meet the 21-year requirement by "tacking" the possession of previous occupants. *Stark v. Lardin,* 133 Pa. Super. 96, 1 A.2d 784, 786 (1938). However, plaintiffs failed to establish with sufficient evidence that their predecessors used defendants' property for parking their cars.

The Bradley plaintiffs have lived in their home in Elfreths Alley since 1991. Mrs. Bradley testified that she never met the previous homeowner, and did not know whether he had parked on defendant's property. (Bradley's testimony, October 13, 2004, p. 110.) Appellant Kettel, however, testified that the previous owner, Bill Lambert, did not own a car and did not park on the defendant's property. (Kettel's trial deposition, p. 58.) Therefore, the Bradley plaintiffs did not show the required 21-year time period of use for a prescriptive easement.

The Cohen plaintiffs failed to clearly establish that their predecessors parked on defendant's property. In fact, the Cohens failed to clearly establish who exactly their predecessors were. Mr. Cohen testified that he purchased the property from a couple named Stone and McCarthy, who had purchased the property from a Tom Halloran in 1986, who had purchased it from a Mr. Berger. (Testimony of David Cohen, October 13, 2004.) Deeds presented by defendant indicate that McCarthy and Stone purchased the home from First Fidelity Bank in 1994, who purchased it from a Mr. Bourne, who had purchased it from Mr. Halloran in 1984. Moreover, Cohen does not know the exact dates in which previous

owners or occupiers purchased or sold the property. (Cohen October 13 testimony.)

Even if the chain of occupation established by the Cohen plaintiffs is correct, the evidence presented that former occupants have parked on the property in question was not sufficient to establish a prescriptive easement. Mr. Cohen testified that he believed that his immediate predecessors, Stone and McCarthy, had parked on defendant's property. He did not have first-hand knowledge of whether anyone else who had owned or occupied the house had parked on defendant's property. (Cohen October 13 testimony.) No previous owner or occupier appeared as a witness to testify about their use or non-use of the lot. Therefore, it was not error for this court to find that the Cohen plaintiffs did not meet their burden of proving a prescriptive easement.

The Kettel plaintiffs did establish that they have used the property in question for parking for 21 years, as they have resided in their home on Elfreths Alley since 1975, and have used the property for parking since that time. Continuous use for 21 years, however, does not itself create a prescriptive easement. The use must also be adverse to that of the owner. *Moore v. Duran,* 455 Pa. Super. at 132, 687 A.2d at 826. Here, Kettel testified that he "believed he had permission" to park in the Casani Candy parking lot. (Kettel's trial deposition, p. 54.) Permission from the owner negates the adversity requirement of a prescriptive easement. "If the use was merely permissive, . . . and not in any sense hostile or adverse, the claim of appellees to a prescriptive right must be rejected." *Stevenson v. Williams,* 188 Pa. Super. 49, 52-53, 145 A.2d 734, 736 (1958). Therefore, the Kettel

plaintiffs also failed to show that they have established a prescriptive parking easement over defendant's land.

Furthermore, the prescriptive parking easement asserted by the plaintiffs is in actuality a claim for adverse possession of the defendant's property. By claiming that they have established their right to park on the lot, plaintiffs are in effect asking for a court to prevent defendant, the property owner, from exercising its rights to the property. A prescriptive easement differs from adverse possession in that with an easement the claimant has made some use of the owner's land, while adverse possession requires exclusivity and possession or occupation. *Newell Rod and Gun Club Inc. v. Bauer,* 409 Pa. Super. 75, 79, 597 A.2d 667, 669 (1991). Plaintiffs do not assert that they used the property in question to the exclusion of the owner, and do not claim that they have adversely possessed the property. Plaintiffs are not entitled to exclusive possession of the lot without establishing that they have met the requirements for a claim of adverse possession.

## CONCLUSION

For the aforementioned reasons, paragraphs 2 and 3 of this court's order of March 17, 2005 should be affirmed, and plaintiffs' claim for a pedestrian easement as prayed for in the complaint and amended complaint should be denied.