J-A15017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID A. MAIELLA AND RICHARD MAIELLA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAN M. JOSEPH AND NANCY C. JOSEPH, INDIVIDUALLY AND AS HUSBAND AND WIFE | : | No. 1369 WDA 2022 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered November 10, 2022
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  10870 of 2021 C.A.

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: October 6, 2023**

Jan M. Joseph and Nancy C. Joseph appeal from the order denying their motion for a preliminary injunction and granting a preliminary injunction against them and in favor of David A. Maiella and Richard Maiella. The court ordered the Josephs to remove obstructions they placed on the westernmost portion of the driveway situated between the parties' properties. We affirm.

This case concerns two neighboring properties on the north side of Neshannock Avenue in New Wilmington. In 2004, the Josephs bought the western property ("the Joseph property"). They moved into the property in 2019. In 2013, David Maiella purchased the eastern property ("the Maiella

_____

[*] Retired Senior Judge assigned to the Superior Court.

property"). Since then, he has leased it to his brother, Richard Maiella, who had previously begun residing there in 2009 as a tenant of the previous owner.

The deeds to both properties describe a 20-foot-wide strip of land between the two properties. The deed transferring the Maiella property in 2013 describes the main parcel as being located "along the East side of [a] private right-of-way" that is "hereafter mentioned." Complaint in Equity, 11/4/21, Ex. 1 at 2. It then states the conveyance includes a 20-foot-wide strip of land to the west of the property that was conveyed to one of Maiella's predecessors in title, Alexander Moore:

> TOGETHER with a strip of land being 20.00 feet wide and extending Northward from said Neshannock Avenue to the Northern boundary of the described property, which said strip of land was conveyed to Alexander Patterson Moore by Howell T. Getty, et ux., by Deed dated April 12, 1920.

*Id.* at 3; *see* Joseph's Memorandum of Law, 8/8/22, at 6.

The Josephs' deed states that their property lies to the west of a "common driveway." Complaint in Equity, 11/4/21, Ex. 2 at 1. The deed explains that a 20-foot-wide strip of land to the east of their property was "deeded to A.P. Moore . . . to be used as a private driveway in common":

> Along the eastern line of the above[-]described lands, there is a strip of land 20 feet wide which was deeded to A.P. Moore by Howell T. Getty, et ux., to be used as a private driveway in common with the said A.P. Moore and his heirs and assigns and Curtis F. Minteer and his heirs and assigns in DBV 181, page 233[.]

*Id.*

- 2 -

There is also a paved driveway between the properties, running northward from the street. The driveway has existed since before either of the parties purchased their properties.

In August 2021, the Josephs began to place temporary structures on the westernmost portion of the paved driveway, where they believe the driveway exceeds the western boundary of the 20-foot-wide strip. They later installed permanent obstructions, such as fence posts, on this portion of driveway.

In November 2021, the Maiellas filed a complaint in equity. They brought claims of adverse possession, ejectment, and easement by prescription. The Maiellas argued the western portion of the paved driveway does not exceed the western edge of the 20-foot-wide strip. In the alternative, they claimed that they own the disputed portion of the driveway under a theory of adverse possession, or that they had an easement by prescription. They also moved for a preliminary injunction, asking the court to order the Josephs to remove the obstructions.

In response, the Josephs counterclaimed for ejectment. They argued that the Maiella's "landscape island" (a group of lights and plants) fell within 20-foot-wide strip and interfered with their ability to use its full width. They also moved for a preliminary injunction and requested an order directing the Maiellas to remove the landscape island.

The court held hearings on March 3 and June 9, 2022. Richard Maiella testified that the paved driveway is approximately 12 or 13 feet wide and is

in alignment with the curb cuts on the street. N.T., 3/3/22, at 10. He testified that the landscape island is adjacent to the paved driveway, measures 20 feet by 20 feet, and has existed since before he lived there. *Id.* at 12-13. He stated that the Josephs' obstructions had narrowed the paved driveway to nine feet in width and force him to drive two feet onto his lawn. *Id.* at 21. He testified the Josephs also drive on the Maiella lawn when they use the paved driveway, and that the Josephs drive through the landscape island, damaging it. *Id.* at 26; N.T., 6/9/22, at 9-10.

Richard further testified that due to the obstructions, turning onto the paved driveway from the street is dangerous. N.T., 6/9/22, at 28. He said that delivery vehicles cannot navigate the driveway. *Id.* at 31-32. Richard further testified that the plow company refuses to plow the driveway, which, along with the grade of the driveway, makes the property inaccessible in the winter. N.T., 3/322, at 22; N.T, 6/9/22, at 29, 33-34. Richard testified that he was unable to access the residence the previous winter except for three days. N.T., 6/9/22, at 28. Richard testified that there is no other vehicular access to the Maiella property. N.T. 3/3/22, at 12; N.T., 6/9/22, at 32. He stated, however, that the Josephs have a separate means of vehicular access to their property. N.T., 6/9/22, at 33. There is no street parking available. *Id.* at 32-33.

David Maiella testified the landscape island was there when he purchased the property, but that he and Richard expanded it approximately 10 years ago. N.T., 6/9/22, at 58-59. He stated he never asked the Josephs

for permission to use the paved driveway because he has always used it to access the property. *Id.* at 70.

Linda Meade testified that she has lived across street from the two properties since 1975. She said that the paved driveway has not changed since that time, until the recent controversy. *Id.* at 48.

John Taylor testified as an expert in surveying. *Id.* at 77. He surveyed the Joseph property. He did not survey the Maiella property, but "did a boundary to verify that we're not encroaching on his property." *Id.* at 83. Taylor determined that the paved driveway exceeds the western boundary of 20-foot-wide strip, encroaching on the Joseph property. *Id.* He also testified "at least a portion" of the Maiella landscape island is located within the 20-foot-wide strip. *Id.*

Jan Joseph testified that he does not believe the landscape island existed when he purchased the home in 2004 but does not know when it was installed. *Id.* at 117-19.[1]

The court found the Maiellas had carried their burden to prove a preliminary injunction was warranted for removal of the Josephs' obstructions from the westernmost portion of the driveway. The court agreed that the harm caused by the obstructions was immediate and irreparable, as the obstructions prevented the Maiellas from accessing their property and forced them to make a dangerously sharp turn from the Avenue onto the driveway and partly onto

_____

[1] None of the exhibits admitted into evidence at the hearing were included in the certified record.

- 5 -

their lawn. Next, the court concluded that the Maiellas would suffer greater injury if the court did not grant the injunction, as their inability to have full use of their property would continue. The court also found the Josephs would suffer minimal harm from the injunction, as they have separate vehicular entrance, and that removing the obstructions would allow both parties to use the full width of the paved driveway without damaging the lawns on either side. The court further found that granting the injunction would restore the parties to the status quo that existed prior to the obstructions.

The court also considered whether the Maiellas were likely to prevail on their underlying claims. First, the court found that the disputed western portion of the paved driveway exceeds the boundaries of the deeded right-of-way. Next, the court found the Maiellas could not prove title to the disputed portion of the paved driveway through adverse possession because they could not prove they had exclusive use of that portion of the driveway. The court found that to the contrary, both parties have used the disputed portion to access their respective properties.[2]

However, the court found the Maiellas were likely to succeed on the merits of their prescription claim because they had used the disputed portion of the paved driveway adversely, openly, notoriously, continuously, and uninterrupted for at least 21 years. Trial Court Opinion, 11/10/22, at 15. For the "adverse" prong, the court considered that the Maiellas never specifically

---

[2] As the Maiellas did not appeal either of these preliminary findings, we need not review them.

requested permission from the Josephs to use that portion of the driveway. For the "open" and "notorious" prongs, the court concluded that the driveway was in full view, and had been paved, maintained, and utilized by the previous and current owners of the Maiella property. For the time prong, the court found that the Maiellas "and their predecessors in interest" had continuously used the entire width of the paved driveway since at least 1975.

The Josephs argued that the Maiellas could not establish a prescriptive easement because they did not have privity of estate with the prior owners during the 21-year prescriptive period. The court considered this argument in conjunction with the Maiellas' consentable line argument in their post-hearing memorandum. The Maiellas contended that the instant parties and previous landowners had consented to the western edge of the paved driveway as the western boundary of the 20-foot-wide strip, and that privity is not required for a consentable line.

The court agreed that consentable line doctrine applied. It found the paved driveway "clearly established an obvious, visible boundary between the properties," and because "the Josephs were put on notice of the Driveway as the boundary of the [20-foot-wide strip] when they purchased the home, as it can be seen giving the sole vehicular access to the Maiella property." *Id.* at 12, 14. The court concluded that because a consentable line existed, privity of estate with the possessors in title to the Maiella property was unnecessary to establish continuous use during the prescriptive period. *Id.* at 12-14; *see also* Pa.R.C.P. 1925(a) Opinion, 1/18/23, at 7 ("The consentable boundary

doctrine supports the assertion here that the easement was acquired by use for the requisite period of twenty-one (21) years, regardless of whether privity of estate exists").

The court also found the Josephs had failed to establish grounds for a preliminary injunction for removal of the Maiellas' landscape island. It concluded the existence of the landscape island does not cause the Josephs immediate and irreparable harm, as it had been in place for years. The court also found that no greater injury would result from leaving it there, considering that the Josephs have alternative vehicular access to their property. The court also found that granting the Joseph's preliminary injunction would substantially harm the Maiellas, who would incur the costs of removing the island. Finally, the court stated, "Based on the Court's ruling that the [Maiellas] are likely to prevail on the merits of their claim," the Josephs are not likely to prevail on their claim for ejectment from the deeded right-of-way. Trial Ct. Op.at 21.

The court issued an order granting the Maiellas' petition for a preliminary injunction, requiring the Josephs to remove the obstructions, and denying the Josephs' motion for a preliminary injunction. The order declared that "the boundaries of the Maiella/Joseph right-of-way shall hereupon be located in alignment with the boundaries of the [paved] driveway, as it existed prior to [the Joseph's] placement of the obstructions." Order, 11/10/22, at ¶ 5.

The Josephs appealed.[3] They raise the following issues:

1. Whether the Trial Court erred, abused its discretion, and/or misapplied the law by finding that [the Maiellas] established by clear and convincing evidence a prescriptive easement based upon a consentable boundary where (i) [the Maiellas] did not plead a claim for consentable boundary; (ii) the sufficient credible evidence did not establish recognition and acquiescence to a consentable boundary, and [(iii)] the consentable boundary doctrine is contradictory to a prescriptive easement.

2. Whether the Trial Court erred, abused its discretion, and/or misapplied the law by finding a prescriptive easement where [the Maiellas] failed to establish by clear and convincing evidence use that was adverse, open, continuous, notorious, and uninterrupted for twenty-one years.

3. Whether the Trial Court erred, abused its discretion, and/or misapplied the law by relocating and substantially reducing the width of the right-of-way which the Trial Court found was granted to [the Josephs] in their deed of record.

4. Whether the Trial Court erred, abused its discretion, and/or misapplied the law by granting a Preliminary Injunction when [the Maiellas] failed to carry their heavy burden establishing the requirements for an injunction, including without limitation, irreparable (i.e. irreversible) harm not compensable by money damages.

5. Whether the Trial Court erred, abused its discretion, and/or misapplied the law by denying [the Josephs'] request for a Preliminary Injunction where the clear, credible, sufficient, and uncontradicted evidence of record established that [the Maiellas] installed and maintained a landscape island within the right-of-way granted to [the Josephs] in their deed.

The Josephs' Br. at 5-6 (suggested answers omitted). We have reordered the issues in our below discussion.

_____

[3] A decision granting or denying a preliminary injunction is appealable as of right. **See** Pa.R.A.P. 311(a)(4).

We employ a "highly deferential" standard of review of a trial court's order granting or denying preliminary injunctive relief. ***Warehime v. Warehime***, 860 A.2d 41, 46 (Pa. 2004). We must "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." ***Id.*** (citation omitted). "Only if it is plain that no grounds exist to support the decree or if the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court." ***Iron Age Corp. v. Dvorak***, 880 A.2d 657, 662 (Pa.Super. 2005).[4] However, we review the grant of a mandatory injunction, which orders a party to undertake a positive act to restore the status quo, with greater scrutiny than we do prohibitory injunctions. ***Mazzie v. Commonwealth***, 432 A.2d 985, 988 (Pa. 1981); ***accord Ambrogi v. Reber***, 932 A.2d 969, 975 (Pa.Super. 2007).

To establish the right to a preliminary injunction, a petitioner must show:

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;
>
> 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

---

[4] As always, we apply a *de novo* standard of review to the court's legal conclusions. ***Pittsburgh Logistics Sys., Inc. v. Beemac Trucking, LLC***, 249 A.3d 918, 935 (Pa. 2021).

3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;

5) that the injunction it seeks is reasonably suited to abate the offending activity; and,

6) that a preliminary injunction will not adversely affect the public interest.

**Warehime**, 860 A.2d at 46-47 (citation and internal quotation marks omitted). If a party fails to establish any of these prerequisites, we must affirm the denial of injunctive relief. **Allied Envtl. Serv., Inc. v. Roth**, 222 A.3d 422, 426 (Pa.Super. 2019).

Although a court must determine whether the moving party has made out a *prima facie* right to relief on the merits of the case, it is not necessary for the moving party to prove it will ultimately prevail on the merits. **Shepherd v. Pittsburgh Glass Works, LLC**, 25 A.3d 1233, 1246-47 (Pa.Super. 2011). A court is not later bound by the findings it makes during the preliminary injunction stage of proceedings. **Porter v. Chevron Appalachia, LLC**, 204 A.3d 411, 419 n.2 (Pa.Super. 2019).

### I. Likelihood Maiellas will Prevail on Prescriptive Easement

The Josephs argue the court erred in concluding that the Maiellas were likely to prevail on their claim for a prescriptive easement to use the western portion of the paved driveway. The Josephs argue that to "tack" onto the time a prior possessor used an alleged prescriptive easement, the claimant must

have privity of estate with the prior possessor. They further contend that a prescriptive easement must be described in the previous deeds. They maintain that the Maiellas fail these requirements and failed to prove that the paved driveway was used continuously between 1975 and 2004. The Josephs point out that the Maiella property was recently owned by both Deutsche Bank and the sheriff, neither of which possessed the property. They further argue the prescriptive easement fails because the Maiellas did not prove that they and their predecessors used the driveway in a manner adversely to the Josephs' or their predecessors' use.

A prescriptive easement is created "by adverse, open, notorious, and uninterrupted use" of some part of the servient tenement for 21 years. *POA Co. v. Findlay Twp. Zoning Hearing Bd.*, 713 A.2d 70, 76 n.13 (Pa. 1998); *Kuhstoss v. Steele*, 234 A.3d 789, 793 (Pa.Super. 2020). The party asserting the easement must present clear and positive proof of its existence. *Vill. of Four Seasons Ass'n, Inc. v. Elk Mountain Ski Resort, Inc.*, 103 A.3d 814, 822 (Pa.Super. 2014).

The trial court had reasonable grounds to conclude that the Maiellas put forth a *prima facie* case establishing their right to a prescriptive easement. First, in this context, "adverse" means a lack of permission to use the land. *See Kaufer v. Beccaris*, 584 A.2d 357, 360 (Pa. 1991) ("Mere silence in the face of open, continuous and uninterrupted use by the owner of the dominant tenement is insufficient to change the adverse nature of such use to a permissive use."). When there is no evidence explaining how the use began,

the presumption is that it arose adversely, and the burden shifts to owner of the servient tenement to prove otherwise. *Id.* at 359. **Compare Waltimyer v. Smith**, 556 A.2d 912, 914-15 (Pa.Super. 1989) (finding adversity where plaintiffs used driveway for 37 years without permission) **with Stevenson v. Williams**, 145 A.2d 734, 737 (Pa.Super. 1958) (finding use of portion of driveway on neighboring property began as permissive, with neighbors splitting cost of maintenance). Unlike a claim of adverse possession, a prescriptive easement does not require that the use of the servient tenement be exclusive. **Newell Rod & Gun Club, Inc. v. Bauer**, 597 A.2d 667, 670 (Pa.Super. 1991).

Here, the Maiellas presented testimony that they had never asked the Josephs if they could use the westernmost portion of the paved driveway, which, the court found, falls on the Josephs' property. The Josephs did not counter with evidence that they or their predecessors in interest had granted the Maiellas or their predecessors permission to use this part of their property.[5] Thus, the Maiellas' use of part of the driveway that falls on the Josephs' property was adverse. The fact that the Josephs were also able to use this portion of their property does not negate that the use by the Maiellas and their predecessors was adverse.

Next, unlike a claim of adverse possession, in which the user of the disputed property claims title to that property, a claim for a prescriptive

---

[5] There was no evidence as to who initially paved the driveway.

- 13 -

easement does not require a possessor of land to have privity of estate with its predecessors and the claim does not need to be written into the deeds transferring the property during the prescriptive period to tack the use of predecessors. **See Predwitch v. Chrobak**, 142 A.2d 388, 389 (Pa.Super. 1958) (rejecting argument "that adverse use by one owner does not become available to a successor in title unless there had been 'tacking,' and that an actual conveyance is required" because "[s]uch a rule has never been applied to easements, which are appurtenances of the dominant estate and require no deed or writing to support them" and "pass by conveyance of the estates to which they are appurtenant").[6]

Thus, the Maiellas needed only to present *prima facie* evidence that they and/or their predecessors in title used the disputed portion of the driveway adversely, openly, notoriously, and uninterruptedly for a 21-year period. **See, e.g., Steel v. Yocum**, 151 A.2d 815, 816 (Pa.Super. 1959) (finding prescriptive right where road across defendants' land had been used by plaintiffs and their predecessors in title for over 65 years).[7] They did not need

---

[6] **See also Brady v. Yodanza**, 425 A.2d 726, 728 (Pa. 1981) ("[W]here an easement is annexed as an appurtenance to land by . . . prescription, it passes with a transfer of the land although not specifically mentioned in the instrument of transfer"); **Paci v. Shipley**, 71 A.2d 844, 846 (Pa.Super. 1950) (holding equity would preserve right of way not described in deed but plainly visible to all parties at time of transfer).

[7] The Josephs do not dispute that the Maiellas presented evidence that the use was "open" and "notorious."

to establish privity of estate with prior possessors, and the deed did not have to describe the prescriptive easement.

Next, for use to qualify as "continuous" and "uninterrupted," it does not need to be "constant." *Newell Rod & Gun Club, Inc.*, 597 A.2d at 670. "Rather, continuity is established if the evidence shows a settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." *Keefer v. Jones*, 359 A.2d 735, 737 (Pa. 1976); *accord Thomas A. Robinson Fam. Ltd. P'ship v. Bioni*, 178 A.3d 839, 848 (Pa.Super. 2017). The continuity required to prove a prescriptive easement is less stringent than for claims of adverse possession. *Newell Rod & Gun Club, Inc.*, 597 A.2d at 670. Breaks in use do not necessarily indicate a change in the attitude required for continuity. *Keefer*, 359 A.2d at 738 n.1. Gaps in the evidence of use during the prescriptive period do not necessarily defeat a claim for a prescriptive easement, where the use was open and notorious such that the servient owners should reasonably have known their possessory rights were being violated. *Id.* at 738-39; *see also Minteer v. Wolfe*, 446 A.2d 316, 319 (Pa.Super. 1982); *Adshead v. Sprung*, 375 A.2d 83, 85 (Pa.Super. 1977).

Here, the Maiellas presented evidence that the paved driveway has been used as the sole means of ingress and egress to the property since at least 1975. Although the neighbor, Meade, did not testify that she had seen a vehicle traverse the driveway daily or recall each owner of the Maiella property between 1975 and the time of the hearing, she did say that she has lived

across the street for the entire period, and the driveway, the only vehicular access to the property, has always been there. The lack of direct evidence of use during the time the bank or the sheriff possessed the property does not defeat the finding of continuity. During that time, the use would have been irregular and does not show a change in the collective "attitude of mind" of the owners of the property regarding their right to use the full width of the paved driveway. The Maiellas set forth, at the very least, *prima facie* evidence of continuous use for the prescriptive period.

## II. The Court's Consideration of Consentable Line Doctrine

The Josephs argue that the court erred in finding that a consentable boundary applied to the easement area. They assert this violated their right to due process, as the Maiellas did not raise this legal theory until after the hearing. They also argue consentable line doctrine is incompatible with prescriptive easements, which they claim are adversarial in nature, and that it applies only to title, not the boundaries of an easement. The Josephs further contend the record evidence does not support a finding that the parties expressly consented that the edge of the paved driveway marks the western boundary of the easement.

The trial court did not err in considering whether consentable line doctrine applies to this case. First, the Maiellas raised the doctrine before the trial court. Although they did so after the hearing, it was before the trial court made its decision. The Josephs did not argue to the trial court and do not argue to this Court that they would have presented any additional evidence

regarding whether a consentable line exists, had this theory of title been presented to them earlier. Indeed, the Josephs notably did not respond to the Maiellas' assertion of the doctrine in their own post-hearing memorandum, which they filed six days after the Maiellas' memorandum was filed.

Furthermore, the Maiellas brought an ejectment action, claiming title to the disputed portion of the paved driveway. Therefore, the court was tasked with determining the relevant property line. Although the Maiellas initially pled title to the disputed property under alternate theories of adverse possession and by deed, we find no reason the court should not have considered whether title exists under consentable line doctrine. An equity court may grant broader relief than that specifically requested, so long as it is "consistent with and agreeable to the case pleaded and proven." ***Karpieniak v. Lowe***, 747 A.2d 928, 931 (Pa.Super. 2000).

Granted, the trial court appears to have conflated the requirements of a prescriptive easement with those of a consentable boundary line and was operating under the mistaken belief that a prescriptive easement requires privity of estate. Nevertheless, the two theories are not incompatible, and we cannot say that a consentable line is inapplicable in this case.

Under the consentable line doctrine, a boundary between neighboring properties may be established either by (1) "dispute and compromise between the parties," or (2) "recognition and acquiescence by one party of the right and title of the other." ***Moore v. Moore***, 921 A.2d 1, 4 (Pa.Super. 2007). The second of these, recognition and acquiescence, is proven where "each party

has claimed the land on his side of the line as his own" and has "occupied the land on his side of the line for a continuous period of 21 years." ***Id.*** at 5. For example, where neighbors maintain their respective yards up to the point of a certain marker or monument, such as a fence or hedgerow, a consentable line may be established. ***See, e.g., Zeglin v. Gahagen***, 812 A.2d 558, 560 (Pa. 2002); ***Plauchak***, 653 A.2d at 673, 676-77.

A consentable line may be established where the parties have simply historically mistaken the actual location of the line between their properties. ***Zeglin***, 812 A.2d at 562. Furthermore, where the disputed property line also marks the boundary of an express easement, consentable line doctrine is applicable. ***See Di Virgilio v. Ettore***, 149 A.2d 153, 156 (Pa.Super. 1959). In this situation, the deeded boundary line may give way to the consentable line, and a prescriptive easement to maintain use of the easement contemplated by the deed or deeds may be created. ***Id.***[8]

Like prescriptive easements, consentable lines do not require the privity of estate required by adverse possession to tack the occupation of the previous landowners to meet the 21-year period. ***Moore***, 921 A.2d at 5. This is because "a prospective purchaser will see the fence or similar marking;

_____

[8] Although the plaintiffs in ***Di Virgilio*** sought to extend their property lines under a theory of adverse possession, this Court applied principles of consentable boundary lines to find the plaintiffs had gained title to the properties where the deeds contemplated the easement, a three-foot alley, should have been. ***Di Virgilio***, 149 A.2d at 156. It also gave the plaintiffs a prescriptive easement over the defendants' properties to maintain the alley that had been in use for over 21 years. ***Id.***

given its obvious presence as apparent boundary, he is therefore put on notice to inquire about its origin, history, and function." ***Zeglin***, 812 A.2d at 566 (citation and quotation marks omitted).

Here, the court did not reach the question of who has fee title to the property under 20-foot-wide strip. ***See Brady v. Yodanza***, 425 A.2d 726, 727 (Pa. 1981) ("existence of a servient tenement for the beneficial use of a dominant tenement is a prerequisite to the creation of an easement appurtenant").[9] However, if the court finds the possessors on both sides recognized the western edge of the paved driveway as the boundary line between their properties and occupied their respective territories up to it for 21 years, it might find a consentable line applies, rather than a prescriptive easement.

We need not determine if the evidence better supports a consentable line or a prescriptive easement, as it is a question for the court sitting in equity in the first instance. We need only conclude that the court's findings regarding the existence of a consentable boundary line do not undermine its finding that the Maiellas have established a prima face case that they have a right to use the western portion of the paved driveway.

---

[9] The record indicates the Maiellas have title to the deeded right-of-way. ***See, e.g.***, Complaint in Equity, 11/4/21, Ex. 1 at 2-3 (stating 20-foot-wide strip was conveyed to Maiella, and was conveyed to Maiella's predecessor, Moore), Ex. 2 (stating right of way was "deeded" to Moore); Joseph's Answer and New Matter to Maiellas' Motion for Injunction, 2/18/22, Ex. C (deed conveying land from Moores to Fischers stating title to the strip was deeded to A.P. Moore, but with right to "the use of said strip as a driveway in common" also vested in the owners of the land situated the immediate west and north of the strip).

**III. Grant of Preliminary Injunction to Remove the Obstructions**

In the Josephs' fourth issue, they contend the court erred in finding that the Maiellas established immediate and irreparable harm to support the injunction. They argue that, although difficult, the Maiellas still have access to their property. They also contend the Maiella's harm is compensable by money damages by way of fair rental value of the property. The Josephs argue that removing the obstructions will cause them greater harm, because they will not have free and unfettered use of that portion of their property.

We disagree. "An injury is deemed irreparable if it cannot be adequately compensated by an award of damages." ***Cosner v. United Penn Bank***, 517 A.2d 1337, 1341 (Pa.Super. 1986). For example, rendering a home unihabitable constitutes irreparable harm. ***See id.*** Here, the trial court had reasonable grounds to conclude that the Josephs' obstructions unreasonably and unnecessarily restricted the Maiellas' access to their property, causing irreparable harm, and that this was greater than the harm which will result from ordering the Josephs to temporarily remove the obstructions from the western portion of the driveway. We come to this conclusion even under the heightened standard of review due a mandatory injunction.

**IV. Denial of Preliminary Injunction to Remove the Landscape Island**

The Josephs' fifth issue is that the court erred in denying their request for a preliminary injunction after it found that the Maiellas' landscape garden falls within the 20-foot-wide strip.

The trial court had reasonable grounds to deny the injunction. The Josephs have failed to assert any harm that will result from allowing the landscape island to remain, let alone immediate or irreparable harm, as they have not stated for what purpose they intend to use this portion of 20-foot-wide strip. As we affirm the court's decision on this basis, we do not need to consider the other prerequisites for preliminary injunctive relief. **Allied Env't Serv., Inc.**, 222 A.3d at 426.

### V. Relocation and Narrowing of 20-Foot-Wide Strip

Returning to the Josephs' third issue, they claim the court erred in relocating and narrowing the 20-foot-wide strip by aligning both the western and eastern boundaries with those of the paved driveway. They claim the court has no authority to change the location of an unambiguous express easement. **See** The Josephs' Br. at 19 (citing **McNaughton Properties, LP v. Barr**, 981 A.2d 222 (Pa.Super. 2009)).[10]

This challenge is premature. While the court stated the boundaries of the right of way would "hereinafter" be those of the driveway, the court was only ruling on whether the Josephs had to remove the obstructions from the paved driveway and whether the Maiellas had to remove the landscape island while the case was pending before the court.

---

[10] **See also Forest Glen Condo. Ass'n v. Forest Green Common Ltd. P'ship**, 900 A.2d 859, 864 (Pa.Super. 2006) ("[I]n Pennsylvania, mere nonuse of an easement does not extinguish an express easement created by a deed").

While the court found the Josephs were unlikely to prevail on their claim for ejectment from the area of 20-foot-wide strip, it is unnecessary for us presently to consider this issue, as we affirm the denial of a preliminary injunction for other reasons. *See* Section IV, supra.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/6/2023