**2017 UT App 56**

## THE UTAH COURT OF APPEALS

ROBERT L. JUDD III AND CHARLES L. ALLEN,
Appellees,
*v.*
DAVID BOWEN,
Appellant.

Opinion
No. 20140285-CA
Filed March 30, 2017

Third District Court, Salt Lake Department
The Honorable Su J. Chon
No. 110917049

Michael D. Zimmerman, Clemens A. Landau, and
Russell A. Cline, Attorneys for Appellant

Bruce J. Nelson and Jeffery S. Williams, Attorneys
for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUSTICE
JOHN A. PEARCE concurred.[1] JUDGE GREGORY K. ORME concurred
in part and dissented in part, with opinion.

ROTH, Judge:

¶1     David Bowen appeals from a judgment granting a
prescriptive easement to Robert L. Judd III and Charles L. Allen
to use and park on his driveway. We affirm in part and reverse
in part and remand the case for further proceedings.

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

BACKGROUND

¶2     This appeal centers on a century-old circular driveway (the Driveway) between two cabins in Big Cottonwood Canyon. The cabin on the southeast of the Driveway belongs to the Bowens,[2] and the Driveway is located almost entirely on their property. The cabin to the northeast of the Driveway belongs to the Judds, who claim a legal right stemming from historic usage to access their property over the Driveway and to park within its bounds.

¶3     A dirt road diverging from the top of Big Cottonwood Canyon Scenic Byway provides access to both properties. In the early 1900s, the predecessors of the two parties built cabins next to each other. At some point during that time, the Driveway was also constructed. The dirt access road terminates at the Driveway. The Driveway is circular, one lane, and narrow, bounded along its outer and inner borders by foliage, shrubbery, boulders, and sloping ground. With the exception of a sliver of its northern portion, the Driveway is located on the Bowens' property. While the Driveway is currently not the only access or parking available for Judd cabin users, over the years it has been their primary access for ingress, egress, and parking purposes. The Driveway also currently provides the Judds' only access to a private driveway in front of their cabin. For the Bowens and their predecessors, the Driveway has served as the only access to their cabin for the owners and their guests.

¶4     The cabins' original builders had been close friends, and until 2008, the Judds and Bowens had coexisted peaceably. For many years, descendants of the original owners of both cabins shared use of their respective cabins among their family

---

2. Although the parties are individuals, they refer to their interests in the property at issue as historically aligned with the Bowen family or the Judd family. Accordingly, we refer to the parties here as the Judds and the Bowens for convenience.

members, with no single family group or member assigned more than a few weeks of dedicated time at either cabin per year. In addition, both groups used their respective cabins during holidays and other special occasions for parties and family gatherings. The Bowens maintain that it was always understood that the Driveway was the Bowens' property, and that the Judds' use was permitted only out of neighborly accommodation, while the Judds maintain that they had "always" used the Driveway as a sort of given; it was their "custom" and "just what [they'd] done." Until relatively recently, the users of the two cabins rarely encountered each other on the Driveway, and the respective groups only occasionally hampered each other's ability to access or enjoy the use of it. On the rare occasions when a Bowen user was already parked on the Driveway when a Judd user arrived, the Judd user would "work around" that impediment and find other access and parking. On the occasions when a Judd user was parked on the Driveway or otherwise blocking a Bowen user's access and parking, the Bowens would request that the Judd user move the vehicle, and the request was always accommodated.

¶5      In 2006, David Bowen bought out his siblings' interests and became the sole owner of the Bowen cabin. As a result, his use of the Bowen cabin increased while the Judds continued to use their cabin under the customary assigned-time arrangement. In 2008, an incident occurred where a Judd user, for the first time, refused to move a vehicle off the Driveway at the Bowens' request. A week later, one of the trustees who shared an interest in the Judds' cabin informed the Bowens that the Judds were asserting a prescriptive right to use and park on the Driveway, and that if the Judds were not able to park on the Driveway, neither could the Bowens. Subsequently, the Bowens erected gates that blocked the Judds from using the portion of the Driveway closest to the Bowens' cabin while allowing the Judds access to the side of the Driveway closest to the Judds' property. The relationship continued to deteriorate, however, as access-blocking incidents increased. The Bowens eventually told the

Judds that they would no longer be allowed to use the Driveway "absent a court order."

¶6      The Judds filed suit in 2011 to establish a prescriptive right to use the Driveway for ingress, egress, and parking purposes. Following a four-day trial, the trial court found that the Judd usage had been "open, notorious," "under claim of right," and "adverse" for the twenty-year prescriptive period. The court accordingly awarded the Judds a prescriptive easement for "reasonable access and parking purposes associated with" the Judds' cabin usage. It also ordered the Bowens to "immediately remove any gates, barricades, rocks, decorative lighting, and recently-grown foliage blocking or interfering with [the Judds'] historic access and use" of the Driveway. The court ordered both parties to "refrain from blocking any users" of either property and to "allow appropriate parking thereon that does not interfere with either parties' use of the cabins located on such properties."

¶7      The court's judgment did not bring peace, however; both parties filed motions to enforce the judgment and hold the other in contempt based on various alleged violations of the court's order. The trial court clarified its final judgment in a January 2015 memorandum decision. In that decision, among other things, the trial court ordered the Bowens to remove a decorative rock border they had installed "sometime after 2008" because it was "not historical," to "restore the walkway adjacent to the Bowen Cabin to a parking spot as was used historically prior to 2008," and to remove "recently grown foliage and trees," which it defined as growth that had occurred following the 1950s to 1970s and is "now infringing upon the driveway."[3] The Bowens appeal.

_____

3. The court stated that it "based its ruling [regarding the foliage removal] on the historical aerial photos from the 1950s to 1970s which showed very little tree growth in" the Driveway.

ISSUES

¶8     The Bowens argue that the trial court erred when it granted a prescriptive easement to the Judds. The Bowens also argue, in the alternative, that the trial court abused its discretion in determining the easement's scope by granting parking rights as part of the easement and "failing to set the boundaries of the easement with reasonable certainty."

ANALYSIS

¶9     Prescriptive easements have a long history in the common law. Initially, they were based upon the rationale that a long and particular use of land by a person other than the landowner was evidence of a lost grant in favor of that user. *See Richins v. Struhs*, 412 P.2d 314, 315–316 (Utah 1966); *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 151 (Utah 1946). Legal recognition of a prescriptive right was said to restore and maintain that lost grant, and the extent of the right was determined by the type of use made of the land during the prescriptive period. *Big Cottonwood*, 174 P.2d at 151–52. While the legal fiction behind prescriptive easements is now seldom invoked, it continues to provide justification for conferring prescriptive rights—namely, that "peace" and the "good order of society" is assured by "leaving a long established status quo at rest rather than by disturbing it." *Richins*, 412 P.2d at 315. In other words, if a non-owner has long made use of land in a particular manner without objection from the land's owner, to prevent "dispute[s] after several decades of amicable use," the law recognizes a prescriptive right for the non-owner to continue making use of the land in the same way. *See Homer v. Smith*, 866 P.2d 622, 628 (Utah Ct. App. 1993) ("[T]he doctrine of prescriptive easement was designed to give legal sanction to property arrangements that have existed peacefully, openly, continuously and without objection for the prescriptive period.").

¶10  To attain legal recognition of a prescriptive easement in Utah, the claimant must prove by clear and convincing evidence that the claimant's "use of another's land was open, continuous, and adverse under a claim of right for a period of twenty years." *Orton v. Carter*, 970 P.2d 1254, 1258 (Utah 1998) (citation and internal quotation marks omitted); s*ee also Lunt v. Lance*, 2008 UT App 192, ¶ 18, 186 P.3d 978 ("Each of [the prescriptive easement elements] must be proven by clear and convincing evidence."). However, "once a claimant has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse." *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998) (plurality opinion). At that point, the landowner, "to prevent the prescriptive easement from arising[,] has the burden of showing that the use was *under* him instead of *against* him." *Zollinger v. Frank*, 175 P.2d 714, 716 (Utah 1946). Stated differently, once the presumption of adverse use arises, "the owner of the servient estate then has the burden of establishing that the use was initially permissive" or that the adverse use, at some point during the prescriptive period, became permissive, to prevent the prescriptive right from being established. *Valcarce*, 961 P.2d at 311–12. "In order for the use to have been permissive it would have to appear that the parties understood that the driveway was upon the [landowner's] property; that it was with this understanding that [the landowner] gave their consent to its use; and similarly that the [claimants] so understood and accepted and used it." *Richins*, 412 P.2d at 316.

¶11  The Bowens challenge the trial court's conclusions regarding every required element of a prescriptive easement, other than the twenty-year time requirement. They argue that the trial court failed to "employ the correct legal standard" when it determined that the Judds acquired a prescriptive right "to use and park on" the Driveway. In particular, they argue that the trial court failed to apply "the critical limitations built into the common law elements of a prescriptive easement claim." As proof, they point to allegedly undisputed evidence, asserting

that it precluded the Judds from clearly and convincingly establishing several prescriptive easement elements.

¶12   "[W]hether the trial court applied the proper legal standard is a question of law that is reviewed for correctness." *Jacob v. Bate*, 2015 UT App 206, ¶ 13, 358 P.3d 346 (alteration in original) (citation and internal quotation marks omitted). While the conclusion that a prescriptive easement has been acquired is a question of law, because that determination is fact-intensive, we afford the trial court a "broad measure" of discretion in its application of the correct legal standard to a particular set of facts and will overturn the determination only if the trial court exceeded its discretion. *Valcarce*, 961 P.2d at 311 (stating that the finding of an easement is "the type of highly fact-dependent question, with numerous potential fact patterns, which accords the trial judge a broad measure of discretion when applying the correct legal standard to the given set of facts"); *see also Lance*, 2008 UT App 192, ¶ 9.

¶13   We first address the trial court's easement determination, affirming the court's conclusion that the Judds have acquired a prescriptive easement to use the Driveway for reasonable access purposes but reversing the court's parking easement determination. We then address the scope of the trial court's orders in light of our conclusions.

I. Existence of the Prescriptive Easement

A.   Access

¶14   The trial court concluded that the Judds had used the Driveway for access continuously, as well as openly and notoriously, since the early 1900s. It concluded that the Judds' use was adverse and that the use was "neither originally nor subsequently permissive." The Bowens do not dispute the trial court's factual findings but instead contend that the court's conclusions failed to incorporate critical limitations of the prescriptive easement elements and that, as a result, those

conclusions are incorrect as a matter of law. Accordingly, "we accept the trial court's factual findings as true and analyze its legal conclusions based on those findings." *Uhrhahn Constr. & Design, Inc. v. Hopkins*, 2008 UT App 41, n.2, 179 P.3d 808. "We review the legal sufficiency of the factual findings—that is, whether the trial court's factual findings are sufficient to support its legal conclusions—under a correction-of-error standard, according no particular deference to the trial court." *Brown v. Babbitt*, 2015 UT App 161, ¶ 5, 353 P.3d 1262 (citation and internal quotation marks omitted).

¶15   We conclude that the trial court's factual findings support its legal conclusions that the Judds had established a prescriptive right to use the Driveway for access purposes. In particular, the trial court's findings permit the legal conclusion that the Judds had established that their use of the Driveway for access purposes was continuous and open and notorious and that the presumption of adversity applied. The trial court's factual findings also support the conclusion that the Bowens have not rebutted the adversity presumption. We address each prescriptive easement element below.

1.    Continuous

¶16   The continuity required to establish a prescriptive easement does not entail frequent or constant use. *Crane v. Crane*, 683 P.2d 1062, 1064 (Utah 1984). Rather, "[a]ll that is necessary is that the use be as often as required by the nature of the use and the needs of the claimant." *Id.*; *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 949 (Utah 1977). Thus, the frequency of use is not critical, and continuity can be established if the claimant can show that he made use of the landowner's property whenever desired or required under the circumstances. *See Richards*, 559 P.2d at 949; *see also Crane*, 683 P.2d at 1064 (concluding that use was continuous where a cattle grazing association drove cattle over a portion of the landowner's property twice a year—once in the fall, and once in the spring, i.e., whenever the claimant needed to do so). The use also "must appear not to have been

interrupted by the owner of the land across which the right is exercised[.]" *Richards*, 559 P.2d at 949 (citation and internal quotation marks omitted).

¶17 With regard to continuity, the trial court found that, "[t]he cabins appeared to have been built to use the Circular Driveway to access the respective properties"; that "[a]ccess to the Judd Cabin driveway is only available from the Circular Driveway" and "there is no legal access to the Judd Cabin property without passing over a portion of the Bowen Cabin property"; that "users of the Judd Cabin and Bowen Cabin have historically accessed their respective properties by using the Circular Driveway located between the [cabins]" and that "[s]uch users have entered and exited the properties by using the Circular Driveway"; that before David Bowen acquired "the Bowen Cabin property, no one owning an interest in the Bowen Cabin property objected to the access . . . on the Circular Driveway by users of the Judd Cabin"; and that "[f]rom at least 1935 to 2008, the Circular Driveway was used regularly by owners and guests of the Judd Cabin property and the Bowen Cabin property."

¶18 These findings adequately support the trial court's conclusion that the Judds' use of the Driveway for access purposes was continuous. They demonstrate that the trial court considered, as required, the "nature of the [Judds'] use" (driving over a narrow one-lane circular driveway to access a cabin property in a forested, mountainous location) in relation to the Judds' need to do so. *See Crane*, 683 P.2d at 1064. They also support a legal conclusion that the Judds had continuously used the Driveway to access their cabin for over seventy years, whenever they desired to access their cabin. *See Richards*, 559 P.2d at 949 ("All that is required is that the use be as often as is required by the owner of the dominant estate."). Further, the trial court made no findings suggesting that the Judds' regular and continuous use of the Driveway for access had been, as a legal matter, broken or interrupted by the Bowens or their predecessors between 1935 and 2008. *See id.* (noting that a

claimant's use "must appear not to have been interrupted by the owner of the land across which the right is exercised").

¶19   To be sure, as the Bowens point out, there was some testimony at trial that not every Judd user was able to use the Driveway for access purposes in every single instance when he or she desired to do so and that the Judds' use was, at times, interrupted by Bowen cabin users. For example, several Judd witnesses estimated that they were able to use the Driveway for access purposes ninety-five percent of the time they attempted to do so, which the Bowens assert demonstrates that the Judds could not use the Driveway for access in every instance they desired. And the Bowens also argue that the continuity requirement was not met because the Bowens, at least in recent years, "repeatedly interrupted the Judds' use of the [Driveway]" by asking Judd users to move their parked vehicles so that the Bowens could use and park on the Driveway. The Bowens contend that such evidence required the trial court to conclude that the Judds' use was not continuous as a matter of law.

¶20   But the Judds sought two distinct easement rights—the right to use the Driveway for access and the right to use the Driveway for parking. Evidence that the Bowens asked the Judds to move vehicles parked on the Driveway is, at best, evidence of interruption of the Judds' asserted *parking* right, not their access right; the fact that the Bowens, on rare occasions, asked the Judds to move parked vehicles and that the Judds accommodated does not demonstrate that the Bowens also interrupted the Judds' right to simply pass over the Driveway. As a result, we do not consider evidence of interruption of the Judds' parking as evidence that the trial court was incorrect in its continuity determination as to the Judds' use of the Driveway for access purposes.

¶21   And as to the access, while there was testimony from some Judd witnesses that, on rare occasions, they could not use the Driveway for access, there was also testimony from several other Judd users that suggested the Driveway was used for

access whenever it was needed or required, without limitation. To the extent this evidence presented a choice of conflicting evidence, we defer to the trial court's judgment in resolving that conflict. *See* Utah R. Civ. P. 52(a)(4) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses."); *see also Lunt v. Lance*, 2008 UT App 192, ¶ 19, 186 P.3d 978 ("[W]e may not substitute our judgment for that of the trial court as trial courts are in a better position to weigh conflicting evidence and evaluate the credibility of witness testimony."). And in any event, the Bowens have not challenged the sufficiency of the evidence supporting the trial court's factual findings or demonstrated that the findings which seem to support the legal conclusion that the Judds' use was continuous were clearly erroneous. Accordingly, we conclude that the trial court's factual findings support its legal conclusion that the Judds' use was continuous.

2.     Open and Notorious

¶22     The open and notorious element requires a claimant to prove that her use of another's property was "with knowledge of the landowner." *Lunt v. Kitchens*, 260 P.2d 535, 537 (Utah 1953). However, proof of *actual* notice or knowledge is not required. *Jensen v. Gerrard*, 39 P.2d 1070, 1072 (Utah 1935). Rather, knowledge may be imputed if the use is "notorious" enough that the landowner could learn of it through "reasonable diligence." *Id.*

¶23     As with the continuity element, the trial court made several findings relevant to its conclusion that the Judds' use of the Driveway for access purposes was open and notorious. It found that "[t]he Circular Driveway has been open, notorious, visible, and apparent to anyone visiting the Judd Cabin and the Bowen Cabin"; "[David Bowen] was aware of the Circular Driveway and use thereof by Judd Cabin visitors" when he acquired the property in 2006; the Judds could not legally access

their cabin property without passing over some portion of the Bowens' property; the "owners of the [two cabins] amicably cooperated in the use of the Circular Driveway for access and parking;" and "[g]iven the small area on which the Circular Driveway was located, the parties would need to cooperate in a neighborly and amicable fashion." The court also found that the "cabins appeared to have been built to use the Circular Driveway to access the respective properties" and that "[t]he Circular Driveway is also in close proximity to each cabin."

¶24    These factual findings demonstrate that the trial court properly considered whether the Judds' use was known—whether actually or constructively—to the Bowens and their predecessors and thus support the trial court's legal conclusion that the Judds' use was open and notorious. *See id.* Even though the cabins were located in a relatively secluded area, the close proximity of the two cabins, the obvious presence of the Driveway and its placement, the history of cooperation, and the Judds' limited legal access to their property support the court's conclusion that the Bowens and their predecessors were aware of (or should have been aware of) the Judds' use and that the Judds' use was therefore open and notorious.

3.    Adversity

¶25    The adversity element focuses on whether the claimant's use of land is "*against* the owner as distinguished from *under* the owner." *Zollinger v. Frank*, 175 P.2d 714, 715 (Utah 1946); *accord Lunt v. Kitchens*, 260 P.2d 535, 537 (Utah 1953); *Jacob v. Bate*, 2015 UT App 206, ¶ 18, 358 P.3d 346. The Utah Supreme Court has held that a presumption of adverse use arises "where a claimant has shown an open and continuous use of the land for the prescriptive period (20 years in Utah)." *Zollinger*, 175 P.2d at 716; *see also Jacob*, 2015 UT App 206, ¶ 18 (same). Once this presumption comes into play, the burden shifts to the landowner to rebut it. *See Zollinger*, 175 P.2d at 716. This generally requires the landowner to "establish[] that the use was initially permissive." *Jacob*, 2015 UT App 206, ¶ 19 (alteration in original)

(citation and internal quotation marks omitted). As we explained in *Jacob*, "the presumption of permissive use applies to cases where there is evidence of a special relationship, such as a license," and in this regard, "Utah courts have differentiated between consent or license and mere acquiescence." 2015 UT App 206, ¶ 21. Proof of the former—consensual use—rebuts the adversity presumption; proof of the latter—mere acquiescence—does not. *See id.* ¶¶ 21–22. And notably, the Utah Supreme Court has explained that adversity does not require "any open hostility" and that a use can be adverse even if "the parties . . . were friendly, or even cordial with each other[.]" *See Richins v. Struhs*, 412 P.2d 314, 316 (Utah 1966); *accord Jacob*, 2015 UT App 206, ¶ 18.

¶26   Here, because the trial court's findings support its conclusions that the Judds' use of the Driveway for access was continuous, open and notorious, and for the required twenty-year period, the court properly presumed the Judds' use for access purposes to be adverse. Consequently, in order to prevent the establishment of a prescriptive right to use the Driveway for access purposes, the Bowens were required to demonstrate that the Judds' use was permissive.

¶27   The Bowens contend the adversity presumption was inapplicable here because "the Bowens opened their driveway for their own use and the Judds merely used it in the same way as the Bowens" and that the Judds' "use arose from neighborly accommodation." As proof, the Bowens refer to what they characterize as undisputed evidence that, first, the Judds merely used the Driveway in the same way that the Bowens did (and only when the Bowens were not already blocking the Driveway), and second, the Bowens "had a long history of accommodating the Judds by allowing them to use [the Driveway] as a turnaround and for additional parking when the Bowen cabin was not in use."

¶28   The court found that, although the initial cabin owners were "good friends," "[t]here was no evidence provided that the

Circular Driveway was initially a permissive use between the properties" and that "[t]here is no evidence that at the time of separation of ownership of the Judd Cabin property and the Bowen Cabin property that the use of the [Driveway] was initially permissive." Rather, the proximity of the cabins and their near simultaneous construction, along with the apparent lack of any other means of access to the Judds' cabin at the time, supported a reasonable inference that the use was not simply a matter of sufferance. Thus, the court deemed the use adverse and concluded that the use "was neither originally nor subsequently permissive." Implicit in the trial court's findings is the determination that the Bowens had not met their burden of demonstrating that the Judds' use was countenanced pursuant to a "special relationship" between the parties—in other words, the Bowens had failed to show that the Judds' use was "under" rather than "against" the Bowens or their predecessors in interest. *See Jacob*, 2015 UT App 206, ¶¶ 21–22; *Homer*, 866 P.2d at 627 (explaining that a court's "finding of adverse use is really the other side of the permission coin" and that such a finding "implicitly rejects" assertions regarding permissiveness based, for example, on a person's "opening a way across his or her property that another uses it without causing damage").

¶29   Further, the trial court made findings that implicitly contradict the Bowens' contentions. For example, rather than finding that the Bowens' predecessors opened the Driveway, the court found that "the Circular Driveway was constructed" "[a]t some point" during the 1900s when the cabins were also constructed. The court further found that the cabins "appeared to have been built to use the Circular Driveway to access the respective properties," particularly because the Driveway "is. . . in close proximity to each cabin," and that users of both cabins had "historically accessed their respective properties by using the Circular Driveway" and that the parties had "amicably cooperated in the use of the Circular Driveway for access and parking" for many years before 2006. The trial court did not find that the Bowens' predecessors alone constructed the Driveway

or that the Judds made passive use of a way that simply appeared to be open next to their property. Instead, the trial court's findings demonstrate that it was a matter of course from the beginning that both parties used the Driveway for access to their respective cabins, particularly given the configuration of the Driveway vis-à-vis both cabins. These findings also show that the court considered the Judds' use as more than a result of mere neighborly accommodation on the part of the Bowens. The court expressly determined that the predecessors of both parties had from the beginning used the Driveway for access and that the Judds' use was the result of mutual cooperation and understanding between the parties, not of one-sided accommodation on the part of the Bowens.

¶30 Moreover, because many of the trial court's factual findings seem to implicitly contradict the Bowens' contentions regarding the permissive nature of the Judds' use, the Bowens cannot successfully persuade us that the trial court's legal conclusion regarding adversity is in error without challenging the sufficiency of the evidence underlying the court's pertinent findings. Although the Bowens characterize the evidence regarding the Judds' permissive use as undisputed and argue that, as a matter of law, that evidence cannot support the court's adversity conclusion, the facts relied on by the Bowens appear to simply be evidence culled from the record that supports their own arguments, without acknowledging conflicting evidence that the trial court's findings necessarily resolved. Pointing to the evidence they believe supports their argument is insufficient to carry their "heavy burden" of persuading us to "reverse under the deferential standard of review" we afford to factual findings. *See State v. Nielsen*, 2014 UT 10, ¶¶ 31, 35, 40, 326 P.3d 645 (holding that a party seeking to challenge "the sufficiency of the evidence to support a factual finding" must "identify and deal with supportive evidence," because a party who fails to do so "will never persuade an appellate court to reverse under the deferential standard of review that applies to such issues").

¶31   For example, though the Bowens claim that the Judds made only passive use of the Driveway already established by the Bowens' predecessors, they fail to identify any evidence that establishes that the Bowens unilaterally opened the Driveway for access only to their own cabin property. *See Buckley v. Cox*, 247 P.2d 277, 279 (Utah 1952) (explaining that, "where a person opens a way for the use of his own premises, and another person also uses it without causing damage, in the absence of evidence to the contrary, such use by the latter is permissive"). Further, the Bowens fail to acknowledge that, while there may have been some testimony at trial involving the Bowens' accommodation of the Judds' use, there was also testimony that the Judds had long used the Driveway for access continuously as a matter of course, without seeking permission to do so or believing that any permission was required. To the extent this represented a conflict in the evidence, it was the trial court's prerogative to resolve it. *Lunt v. Lance*, 2008 UT App 192, ¶ 19, 186 P.3d 978 ("[W]e may not substitute our judgment for that of the trial court as trial courts are in a better position to weigh conflicting evidence and evaluate the credibility of witness testimony.").

¶32   As a result, we are not persuaded that the trial court's factual findings cannot support its legal conclusion that the Judds' use of the Driveway for access purposes was neither initially nor subsequently permissive. Rather, the court's findings support the conclusion that the Judds' use was not the result of a special relationship, such as use by consent or license, between the two parties. *See Jacob v. Bate*, 2015 UT App 206, ¶¶ 21–22, 358 P.3d 346 (explaining that the presumption of permissive use "applies to cases where there is evidence of a special relationship," such as where there is consent or license to use). And more to the point, the court's findings also demonstrate that the court rejected the Bowens' characterization of the Judds' use as permissive as well as the evidence that may have conflicted with that conclusion. *See Homer v. Smith*, 866 P.2d 622, 627 (Utah Ct. App. 1993). Thus, we are unpersuaded that the

trial court erred when it determined that the Judds' use of the Driveway for access purposes was adverse.[4]

¶33 In sum, we conclude that the Bowens have not demonstrated that the trial court erred in concluding that the Judds had established a prescriptive right to use the Driveway for access purposes—in other words, that their use of the Driveway for access was continuous, open and notorious, and adverse for the requisite period of time. Accordingly, we affirm the trial court's conclusion that the Judds had "acquired a prescriptive easement to use the Circular Driveway for reasonable access . . . purposes."

B.     Parking

¶34    While we affirm the trial court's conclusion that the Judds have acquired a prescriptive easement to use the Driveway for access to their cabin property, we reverse the trial court's conclusion that the Judds acquired an easement to use the Driveway for parking purposes. The trial court concluded that all the elements of a prescriptive easement had been met to establish that the Judds had also acquired a parking easement on the Driveway. It found that the Driveway is a "narrow" right-of-way "wide enough for only one vehicle" and that, in the past, users of both cabins "had parked on or near the Circular Driveway" as well as "in [its] center portion." The court then ordered that the Bowens "should take no action that would prohibit users of the Judd Cabin to continue their historic use of the Circular Driveway for access and parking associated with use of the Judd Cabin" and that both parties "should allow appropriate parking that does not interfere with either's use of the cabins."

---

4. To the extent that the Bowens have addressed "under a claim of right" as a separate element in their arguments, we have considered it in connection with our adversity analysis.

¶35   The Bowens argue that a prescriptive parking right "is outside the scope of a prescriptive easement." They contend that a prescriptive right for parking is inconsistent with the concept of prescriptive easements because, in effect, it provides a "right to exclude the [landowner, in this case, the Bowens] from using their own property." The Bowens compare the parking easement sought by the Judds to the circumstances in *Nyman v. Anchor Dev., LLC*, 2003 UT 27, 73 P.3d 357, arguing that the reasoning employed by the Utah Supreme Court in *Nyman* compels the conclusion that granting the Judds a prescriptive parking right was an error as a matter of law. They also contend that we ought to be persuaded by cases outside of Utah that have suggested a parking easement is inconsistent with a prescriptive right and is instead more akin to rights sought through adverse possession. *See Mehdizadeh v. Mincer*, 54 Cal. Rptr. 2d 284, 289–92 (Cal Ct. App. 1996); *Cohen v. Quarry Estates LLC*, 6 Pa. D. & C. 5th 388, 394–97 (Pa. Ct. Com. Pl. 2006).

¶36   While we need not decide here whether a parking easement is categorically inconsistent with a prescriptive easement as a matter of law, we agree with the Bowens that a prescriptive parking right in these circumstances more closely resembles the sort of rights typically associated with adverse possession rather than the more limited easement rights acquirable by prescription. Because the land at issue here is a small area involving a narrow, one-car-wide driveway situated "in close proximity to each cabin," we conclude that granting the Judds a prescriptive right to park in any location on the Bowens' property that is on, around, or in the center of the Driveway impermissibly excludes the Bowens from meaningful "use and enjoyment" of the Driveway and the surrounding land at all times that the Judds exercise their right to park on it.

1.   Adverse Possession Versus Prescriptive Easement

¶37   The claims of prescriptive easement and adverse possession are similar. *Rotenberger v. Burghduff*, 2007 SD 19, ¶ 12 & n.8, 729 N.W.2d 175, 179 n.8; *see also* 28A C.J.S. *Easements* § 23

(2016) (explaining that "the elements necessary for a prescriptive easement resemble those necessary for adverse possession"). Both rely upon the claimant establishing that the kind of use they have made of another's land is open and sufficient to put the landowner on notice of the use, that the use is hostile and adverse, that the use is continuous, and that the use continued for the requisite period. *See generally Allred ex rel. Jensen v. Allred*, 2008 UT 22, ¶ 17, 182 P.3d 337 (listing the elements required to establish adverse possession); *Lunt v. Lance*, 2008 UT App 192, ¶ 18, 186 P.3d 978 (listing the elements for a prescriptive easement claim); *see also* Utah Code Ann. §§ 78B-2-212 to -214 (LexisNexis 2012) (setting out the requirements for establishing a claim of adverse possession). And importantly, in both contexts, it has been recognized that a one-size-fits-all approach is not appropriate to determining whether a particular use has matured into either possession or a limited right of use. *See Allred*, 2008 UT 22, ¶ 21 (noting that the possession of land necessary to establish adverse possession "cannot be uniform in every case" and that "there may be degrees in the exclusiveness even of the exercise of ownership" (citation and internal quotation marks omitted)); *Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998) (plurality opinion) (noting that whether a prescriptive easement exists is a "type of highly fact-dependent question, with numerous potential fact patterns").

¶38   While the elements of the claims are similar, however, the character of the use and the rights available under each are not. Adverse possession, as its name suggests, is an avenue by which a claimant may acquire a possessory interest in the land at issue. *See* 25 Am. Jur. 2d *Easements & Licenses in Real Property* § 39 (2016) (explaining that "adverse possession deals with possession" and "operates to divest title to the land at issue"); 3 Am. Jur. 2d *Adverse Possession* § 2 (2016) (defining adverse possession "as the open and notorious possession and occupation of real property under an evident claim or color of right or, in other words, a possession in opposition to the true title and record owner—a possession commenced in wrong and maintained in right"). The

successful adverse possession claimant gains the right to treat the property at issue as an ownership interest and may accordingly exercise the rights typical of landowners over the property. *See Osguthorpe v. Wolf Mountain Resorts, LC*, 2010 UT 29, ¶ 25, 232 P.3d 999 (explaining that "[t]he uses a possessor in land may make of the space within his possession are, in general, undefined and are limited only by the rights of others" (citation and internal quotation marks omitted)). This includes the right to use and occupy the land to the exclusion of others. *See id.* ("[O]ne with a possessory interest has the right and intention to exclude other members of society in general from any present occupation of the land." (citation and internal quotation marks omitted)); *cf. Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 24, 321 P.3d 1054 (explaining that, among the rights associated with those who have "the control of a landowner in actual occupation of property" is the "right to exclude others from the property altogether").

¶39　The type of right acquired through adverse possession is reflected in the type of use that must be made by the claimant during the required period. Adverse possession claimants must demonstrate that they have actually possessed the land. *See Allred*, 2008 UT 22, ¶¶ 18–21 (explaining that "actual possession and occupation" is a requirement of adverse possession). This makes sense; a person should not be permitted to acquire an ownership interest over the property of another unless they have, during the required period, acted as though they actually owned the land. However, the actual possession required to prove the claim will not be the same in every case. Our supreme court has recognized that "actual possession is a flexible term, and the use of property necessary to establish it will vary with the character of the property." *Allred*, 2008 UT 22, ¶ 21 (internal quotation marks omitted); *see also* 3 Am. Jur. 2d *Adverse Possession* § 18 (2016) ("The determination of what acts amount to actual possession of property . . . depends upon and varies with the nature, character, and location of the property. In other words, the type of possessory acts necessary to constitute actual

possession . . . in one case may not be essential in another, due to the character and location of the property." (footnotes omitted)). This generally means that the "claimant's use of the property . . . need be only the ordinary use an owner would make of [the land]"—that is, it need only "comport[] with the ordinary management of similar lands by their owners[.]" 3 Am. Jur. 2d *Adverse Possession* § 19 (2016).

¶40    Ultimately, the "pivotal consideration" underlying the actual possession of the land is that it be "of such character or under such circumstances that the owner knows, or as a man of ordinary prudence should know, that the land was being held as his own by an adverse claimant." *Scott v. Hansen*, 422 P.2d 525, 528–29 (Utah 1966); *accord Cooper v. Carter Oil Co.*, 316 P.2d 320, 323 (Utah 1957) ("It is to be kept in mind that the primary reason we are concerned with the nature of the defendant's possession is for the purpose of determining what notice it would give to the owners and to the world that he claimed ownership of the property."). In this regard, our courts have found sufficient the actual possession from a variety of uses ranging from physical occupation of the land through construction of permanent structures and improvements to exclusive occupation of grazing land for three weeks every year. *See, e.g.*, *Falconaero Enter., Inc. v. Valley Inv. Co.*, 395 P.2d 915, 916 (Utah 1964) (holding that the claimant had established adverse possession where the claimant had enclosed the land with an electric fence, built improvements and created an artificial lake on the land, grazed the land, and conducted a commercial enterprise on the land for seven consecutive years); *Cooper*, 316 P.2d at 323–24 (holding that a claimant's possession of the property for grazing purposes was sufficient to establish his right to the land through adverse possession even though the claimant actually occupied the land only "for a period of about three weeks each year," where "the property in question was unfenced grazing land" and the claimant used it each year "until all the feed was grazed off").

¶41    A prescriptive easement claimant, on the other hand, does not need to show actual possession or occupation of the land to acquire the right. This is because prescriptive easements are nonpossessory interests—the right acquired by the successful easement claimant is not one of possession or occupation. *See Alliant Techsystems, Inc. v. Salt Lake County Board of Equalization*, 2012 UT 4, ¶ 22 n.26, 270 P.3d 441 (explaining that "an easement is a nonpossessory interest in land owned by another person"); *see also* Restatement (First) of Property: Easements Introductory Note (1944) ("The presence or absence of the privilege of exclusive occupation marks the dividing line between possessory and nonpossessory interests."). An easement is an incorporeal right. *See Clawson v. Wallace*, 52 P. 9, 10–11 (Utah 1898) (explaining that an easement "is incorporeal" and that it is a right "incapable of possession or occupancy"); 28A C.J.S. *Easements* § 5 (2016) (explaining that one of the "essential qualities of easements" is that "they are incorporeal" rights "imposed on corporeal property"). It is a property interest that consists of the privilege to merely use—rather than occupy or possess—the land of another for a circumscribed, limited purpose. *See Alliant Techsystems*, 2012 UT 4, ¶ 22 n.26 (explaining that an easement consists of "the right to use the land"); *Nyman v. Anchor Dev., LLC*, 2003 UT 27, ¶ 18, 73 P.3d 357 ("[T]he term 'use' implies an inherent distinction in the property rights conferred by an easement, on the one hand, and outright ownership, on the other."). "A prescriptive easement does not result in ownership, but allows only use of property belonging to another for a limited purpose," *Nyman*, 2003 UT 27, ¶ 18 (citation and internal quotation marks omitted), one "that is not inconsistent with the general use of the property by the owner," 25 Am. Jur. 2d *Easements & Licenses* § 1 (2016).

¶42    As a result, a successful prescriptive easement claimant does not (and, in fact, cannot) gain the right to occupy or possess the landowner's property. Indeed, the claimed right to use may not be "inconsistent with either the [landowner's] ownership interest or the general property right of the owner, or the general

use of the property by the owner." 28A C.J.S. *Easements* § 1 (2016) (footnotes omitted). This means, in practical terms, that the prescriptive easement itself may not be of such a character that, when exercised, it operates to effectively divest the landowner of his or her ownership rights in the property—that is, the easement cannot "create the practical equivalent of an estate." *See* 28A C.J.S. *Easements* § 32 (2016) (explaining that a "party must satisfy the elements of an adverse possession rather than a prescriptive easement where an easement would create the practical equivalent of an estate"). Rather, the rights of the easement holder and the landowner must be capable of being balanced so as to afford each the ability to "use and enjoy" the rights attendant to use the property for a limited purpose on the one hand and ownership on the other. *See North Union Canal Co. v. Newell*, 550 P.2d 178, 179 (Utah 1976) (explaining that the easement holder is entitled only to "have the right to use and enjoy his easement to the fullest extent possible not inconsistent with" the landowner's rights while the landowner is entitled to "have the use and enjoyment of his property to the highest degree possible," while accounting for the easement).

¶43 Determining the appropriate boundary between the rights of a prescriptive easement holder and a landowner is not an easy task. But a review of cases in which our courts have awarded or affirmed awards of prescriptive easements suggests that the balance has been struck by limiting the scope of a prescriptive easement to the sort of transitory uses which place relatively minimal burdens on the landowner's own use of the property. For example, most prescriptive easements consist of one version or another of a right merely to pass over another's land, such as a right-of-way, for purposes related to access or ingress and egress. *See, e.g.*, *Orton v. Carter*, 970 P.2d 1254 (Utah 1998) (concluding that each party owned an easement over a common lane for access purposes); *Crane v. Crane*, 683 P.2d 1062 (Utah 1984) (affirming the award of an easement to a grazing association to drive cattle over a limited area of a property twice a year); *Richards v. Pines Ranch, Inc.*, 559 P.2d 948, 948 (Utah 1977)

(awarding the plaintiffs a prescriptive easement to cross over "a rough road across defendant's land"); *Richins v. Struhs*, 412 P.2d 314 (Utah 1966) (concluding that claimants had established a prescriptive easement to use a common driveway and bridge approaching the adjoining properties for access purposes); *Zollinger v. Frank*, 175 P.2d 714 (Utah 1946) (affirming the claimant's right to use a strip of his neighbor's land for access to his land from a public road); *Jacob v. Bate*, 2015 UT App 206, ¶ 12, 358 P.3d 346 (affirming the trial court's decision that the claimants had established an easement "for ingress and egress" of an alley adjacent to their commercial building "for proper maintenance of the adjacent buildings" (internal quotation marks omitted)); *Lunt v. Lance*, 2008 UT App 192, 186 P.3d 978 (affirming the trial court's award to easement claimant of right to use a lane to access the rear of his property); *Martinez v. Wells*, 2004 UT App 43, 88 P.3d 343 (affirming a prescriptive easement for claimants to use a historic dirt roadway for ingress and egress purposes); *Homer v. Smith*, 866 P.2d 622 (Utah Ct. App. 1993) (affirming a prescriptive easement for the claimant's use of a right-of-way across the front and rear parking areas of an adjacent landowner's property to reach his building).

¶44 And we have been unable to find any case affirming the establishment of a prescriptive easement where the right sought involved more than a transitory, occasional intrusion on the landowner's property. *Cf. Nyman*, 2003 UT 27, ¶ 18 (noting that "no prior Utah case recognize[s] a prescriptive easement right to maintain a permanent structure on someone else's property"). Indeed, in *Nyman*, our supreme court reiterated the limited character of the easement right. The plaintiff claimed a prescriptive right to occupy a small portion of the landowner's property for an encroaching garage. *Id.* ¶ 17. Our supreme court rejected the claimant's argument that the small size of the portion of the lot occupied by the garage made it legally insignificant. Instead, it concluded that the "the garage's intrusion onto [the lot] is not so small as to be truly inconsequential" and held that the plaintiff was "not entitled to a

prescriptive easement because the property right that he claims would effectively deprive [the landowner] of all rights to which, as record owner, he is entitled." *Id.* ¶ 18. It reasoned that "[a] prescriptive easement . . . allows only use of property belonging to another for a limited purpose" and that "[w]henever there is ownership of property subject to an easement there is a dichotomy of interests, both of which must be respected and kept in balance." *Id.* (citations and internal quotation marks omitted). It determined that "a balance between the rights of the fee title owner and a purported easement holder becomes impossible where the latter asserts a right to permanent exclusive occupancy of the fee title-owner's land." *Id.*

¶45 In sum, then, the defining difference between adverse possession and prescriptive easement is the character of the interest sought—whether the interest may be characterized as possessory or nonpossessory. If the character of the interest sought is essentially possessory, it moves into the realm of adverse possession, not prescriptive easement. We acknowledge that the line between possession and use is not always easily discernible. *Cf. Valcarce v. Fitzgerald*, 961 P.2d 305, 311 (Utah 1998) (plurality opinion) ("The finding that an easement exists is a conclusion of law. Such a finding is, however, the type of highly fact-dependent question, with numerous potential fact patterns, which accords the trial judge a broad measure of discretion[.]"). Indeed, our courts have repeatedly recognized that the particular circumstances of a case determine the character of the use and, in the end, whether the property rights sought by a claimant may be established. *E.g.*, *Allred ex rel. Jensen v. Allred*, 2008 UT 22, ¶ 21, 182 P.3d 337 (noting that the possession necessary in adverse possession is "a flexible term" and that "the use of property necessary to establish it will vary with the character of the property"); *Lunt v. Lance*, 2008 UT App 192, ¶ 9, 186 P.3d 978 (noting that the conclusion that a prescriptive easement exists, while a question of law, "is so fact-dependent that trial courts are generally accorded 'a broad measure of discretion when applying the correct legal standard

to the given set of facts'" (quoting *Valcarce*, 961 P.2d at 311)). Nonetheless, the doctrines of prescriptive easement and adverse possession each have their conceptual limits, as we have discussed above, and it is helpful to visualize the uses that may constitute possession or easement by prescription as falling along a spectrum, with outright ownership on the one end and very limited uses, such as passage twice a year over another's property, *see Crane*, 683 P.2d at 1064, 1068, on the other. The question before us is where on that spectrum the right the Judds sought fell and ultimately whether that use was consistent, as a matter of law, with the nature of the right asserted. *See Valcarce*, 961 P.2d at 311 (clarifying that we afford significant discretion to the trial judge in making the finding that an easement has been established when the trial judge "appl[ies] the correct legal standard").

¶46    Accordingly, for us to determine if the parking right sought in this case is consistent with the concept of prescriptive easement, we must determine whether, under the particular circumstances, the character of the parking right sought was more similar to possession or transitory use, keeping in mind that, as discussed, an easement by prescription may not intrude so far into the landowner's rights so as to effectively deprive him or her of meaningful exercise of either use or ownership of the property at issue. *See Nyman v. Anchor Dev., LLC*, 2003 UT 27, ¶ 18, 73 P.3d 357.

2.    The Parking Right

¶47    The trial court awarded the Judds a prescriptive easement to park on the Bowens' property according to their "historic use," which it found included parking "on or near the Circular Driveway" as well as "in the center portion" of the Driveway. In other words, the court did not limit parking to the track of the Driveway itself. Rather, the court established in favor of the Judds a right to park on, around, or in the center of a narrow driveway situated on a "small area," which currently "is wide enough for only one vehicle," "in close proximity to each cabin,"

where historic use has required the parties to "cooperate in a neighborly and amicable fashion" to accommodate both parties' needs. We conclude that the right to park in favor of the Judds intrudes too far into the Bowens' ownership rights to fit within the limited scope of a prescriptive easement. In particular, because the Judds sought to establish a right to park on essentially a first-come, first-served basis, where their own parking may continue open-endedly and their right to park may not be prevented or interrupted by the Bowens, we conclude that the right sought is not limited to mere use but extends beyond the concept of an easement and into the realm of occupation and possession.

¶48   To begin with, the trial court found that there is very limited land available on or immediately adjacent to the Driveway, that the parties had historically parked all around and in the center of the Driveway, and that the parties have had to accommodate each other's parking use. These findings were corroborated at trial by evidence that the parties' need for the land overlapped; the Bowens and the Judds testified that there were times when the Bowens requested that the Judds move a parked vehicle that was impeding Bowen use and that occasionally the Judds had to "work around" times that a Bowen user was parked on the Driveway upon their arrival. Judd users also testified that they would park anywhere there was space on or around the Driveway when they arrived, which included the available land on, in the center of, and around the Driveway's track. In other words, given the limited available land, the parties' need for parking at times overlapped and brought them into competition for the limited space available, which not only required accommodation but seemed to extend at times to a first-come, first-served occupation.

¶49   As a consequence, the parking right sought by the Judds more closely resembles occupation and possession, because it permits the Judds to physically exclude and prevent the Bowens from using a portion of their property for the indeterminate time

during which the Judds occupy it. It also requires the Bowens during times of Judd occupation to cede to the Judds their own competing right as the landowner to use the implicated land in any way, even in the same manner as the Judds. *See Cohen v. Quarry Estates LLC*, 6 Pa. D. & C. 5th 388, 397 (Pa. Ct. Com. Pl. 2006) (explaining that the plaintiffs' claim for an easement to park on the landowner's property was "in actuality a claim for adverse possession of the [landowner's] property," because the plaintiffs were requesting the court "to prevent [the landowner] . . . from exercising its rights to the property"); 28A C.J.S. *Easements* § 4 (2016) ("An easement is a right to use the land burdened by the easement rather than a right to occupy and possess the land as does an estate owner."). The Judds sought the right to park either on or adjacent to the Driveway on the Bowens' property without limit as to time frame or location within the affected property, essentially on a first-come, first-served basis, without interruption or prevention by the Bowens. But such a right gives the Judds the ability to wholly exclude the Bowens from that portion of the already limited land available for the Bowens' own parking, access, and general enjoyment as owners, so long as the Judds occupy the space before the Bowens do and for as long as their stay at the Judd cabin may last. The only constraint on the Judds' use, other than the court's admonition to refrain from generally blocking and interfering with the Bowens' use of their own cabin, appears to be the practical limits that come from the fact that Judd users are not necessarily in residence on a permanent basis and a Bowen user may be there first. *Compare Nyman*, 2003 UT 27, ¶ 18 (explaining that physical occupation is inconsistent with the limited use permitted through prescriptive easements), *with Crane v. Crane*, 683 P.2d 1062, 1068 (Utah 1984) (affirming a prescriptive right for grazing association claimants to pass over a portion of the landowner's property twice a year as part of a cattle drive).

¶50 We acknowledge that intermittent parking is a more limited intrusion than, for example, the permanent structure in *Nyman*. But here the property at issue has very limited space

available for parking, and the court's findings and record evidence portray a history of overlapping demand for use of the affected property by both the Judds and the Bowens, which would inevitably continue under the court's easement determination. Indeed, a prescriptive parking right in favor of the Judds essentially permits them to exclude the landowner from the same property during the period of occupation, a period seemingly limited only by the Judds' discretion as to the timing and duration of their cabin stays. In these circumstances, the parking right seems further along the spectrum toward adverse possession than toward prescriptive easement, which involves more limited and transitory uses than are present here. *See Nyman*, 2003 UT 27, ¶ 18 (noting that even seemingly small occupation intrusions are generally inconsistent with the rights created by prescriptive easements).

¶51     Indeed, in light of the limited land available and the parties' competing needs, the prescriptive parking easement awarded by the trial court seems to create a type of time-share interest in the Driveway and the surrounding land that more closely resembles a shared ownership interest in favor of the Judds than the transitory use typical of an easement or right-of-way. *See South Ridge Homeowners' Ass'n v. Brown*, 2010 UT App 23, ¶ 3, 226 P.3d 758 (defining "timeshare" as a "'joint ownership or rental of a vacation lodging (such as a condominium) by several persons with each occupying the premises in turn for short periods'" (quoting *Timeshare*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/timeshare) [https://perma.cc/X3ZR-4BA2]; NTS Am. Jur. 2d *Real Estate Time-Sharing* § 1 (2016) (explaining that "time-sharing involves the division of ownership of resort property into a number of fixed time periods during which each purchaser has the exclusive right of use and occupation"). In effect, the court's order permits the Judds, as with a timeshare, to treat the Driveway and surrounding property as their own and to entirely exclude the Bowens from use or occupation of that property for the duration of a particular stay. *See* NTS Am. Jur. 2d *Real Estate Time-Sharing* § 1

(2016); *see also Alliant Techsystems, Inc. v. Salt Lake County Board of Equalization*, 2012 UT 4, ¶ 28, 270 P.3d 441 (defining "exclusive possession" as a state where "the user or possessor must have this right over a definite space for a definite time"); *cf. Gillmor v. Gillmor*, 694 P.2d 1037, 1040 (Utah 1984) (defining "exclusive use" in the context of cotenancy as "mean[ing] more than one cotenant using the entire property; it requires either an act of exclusion or use of such a nature that it necessarily prevents another cotenant from exercising his rights in the property"). The court's order also grants the Judds a level of control over the Driveway and the surrounding area more indicative of the exclusivity inherent in a time-share interest than that in a transitory use. *See Alliant*, 2012 UT 4, ¶ 28 (explaining that an "example[] of the type of control needed for exclusive possession [is] . . . the general power to admit or exclude others, including the property owner, from any present occupation of the property"). In particular, other than the admonition against blocking and inappropriate interference with the Bowens' use, the order leaves it up to the Judds' discretion to determine the timing, duration, and location of a particular parking stay. Based upon their historic parking patterns, the Judds apparently may park at any location on, near, or in the center of the Driveway so long as it is not already occupied by the Bowens. And the Judds' arguments on appeal certainly imply that they have earned by prescription the right to park and remain parked on the portions of the Bowens' land implicated by their historic use whenever they choose and for whatever length of time they or their guests choose, without interruption or prevention by the Bowens.

¶52 Further, even if the parking is itself only intermittent, the parking right granted seems to require that the Driveway and adjacent land be reserved for the Judds' exclusive use for whenever they may be in a position to occupy it. This excludes the Bowens from the land in a way that is conceptually inconsistent with the limited intrusions on the landowner's rights which are typical of a prescriptive easement. *See id.* This is illustrated best by the trial court's general admonition to the

parties to cooperate to avoid conflict in the exercise of their competing rights of occupation. The admonition to cooperate indicates that both parties have a near-equal right to occupy portions of the Driveway or the surrounding property for parking purposes as co-owners would. *See Coowner*, Black's Law Dictionary (10th ed. 2014) ("Someone who is in concurrent ownership, possession, and enjoyment of property with one or more others," such as a "tenant in common" or a "joint tenant"). In other words, the admonition to cooperate seems to elevate the Judds' property interest to a level equivalent to the landowner's because it requires the Bowens not to interfere with the Judds' right to occupy the property—whether the Driveway track itself or the land near or at the center of it—at their will, subject only to an obligation to cooperate that seems to be imposed equally on both parties. Put another way, the parking right requires the Bowens to preserve the entirety of the affected land for use by a co-occupant with essentially equivalent rights. This burden seems different in kind from the sort of minor accommodation that might be necessary in the case of a prescriptive right-of-way, where the landowner's conceptual exclusion is limited only to refraining from general use and enjoyment that unreasonably restricts or interferes with the easement holder's limited privilege of use.[5] *See McBride v. McBride*, 581 P.2d 996, 997 (Utah

---

5. We also note that the parking right the Judds sought to establish—one that permits them to park without interruption by the Bowens—does not seem to be entirely consistent with the evidence regarding the more recent parking patterns between the parties. From the evidence presented at trial, it appears that on the occasions when a Bowen user requested that a Judd user move a parked vehicle to permit the Bowens' own parking, the Judd user complied (at least until the incident in 2008 that seemed to spark this litigation, where a Judd user for the first time refused to move a parked vehicle at the Bowens' request). *See supra* ¶¶ 4–5. But the trial court's decision granted a parking right to the Judds which now requires the Bowens to

(continued…)

1978); *North Union Canal Co. v. Newell*, 550 P.2d 178, 179 (Utah 1976); *see also Nyman v. Anchor Dev., LLC*, 2003 UT 27, ¶ 18, 73 P.3d 357 (suggesting that the concept of a prescriptive easement is inconsistent with a right of exclusive occupation); 28A C.J.S. *Easements* § 1 (2016) ("An easement is the right to use the land of another for a specific purpose that is not inconsistent with either the other's ownership interest or the general property right of the owner, or the general use of the property by the owner." (footnotes omitted)). It also necessarily makes impossible a balancing between the landowner's right to use and enjoy his property to the "highest degree possible" against an easement holder's right to enjoy only his easement to the "fullest extent possible not inconsistent with the rights of the fee owner." *See Newell*, 550 P.2d at 179. If the easement holder's rights are on a level near-equal to the landowner's, they are directly competing with the landowner's rights, and striking the proper balance between the interests of the parties cannot be accomplished. *Cf. Nyman*, 2003 UT 27, ¶ 18 (noting that "[m]aintaining . . . a balance between the rights of the fee title owner and a purported easement holder becomes impossible where the latter asserts a right to permanent exclusive occupancy of the fee title owner's land").

¶53 In this regard, as urged by the Bowens, we find the court's reasoning in *Cohen v. Quarry Estates LLC*, 6 Pa. D. & C. 5th 388 (Pa. Ct. Com. Pl. 2006), to be persuasive. In *Cohen*, the plaintiffs were several homeowners who claimed that they had established an easement to park in a lot located to the rear of their residential street. *Id.* at 389. The court determined that the

_____

(…continued)
accommodate the Judds' parking in a way that is more consistent with joint ownership than with the more limited concept of a prescriptive easement and seems to depart from the balance the parties themselves seemed to observe, at least in more recent times.

various plaintiffs had not proven their prescriptive right with "clear and positive" evidence, and therefore they were unable to establish that they and their predecessors had parked on the lot for the required twenty-one-year period or that their use was adverse. *Id.* at 394–97. The court went on to explain, however, that even if the evidence had established that the plaintiffs' use met the required elements, their request for a prescriptive easement to park on the defendants' property was "in actuality a claim for adverse possession of the defendant's property." *Id.* at 397. The court explained that "[b]y claiming that they have established their right to park on the lot, plaintiffs are in effect asking for a court to prevent defendant, the property owner, from exercising its rights to the property," which included the right to build on and improve it, as the landowner desired to do. *Id.* The court then compared a prescriptive easement to adverse possession, stating that a "prescriptive easement differs from adverse possession in that with an easement the claimant has made some use of the owner's land, while adverse possession requires exclusivity and possession or occupation." *Id.* The court found that the plaintiffs had not asserted "that they used the property in question to the exclusion of the owner," and it ultimately determined that the plaintiffs "are not entitled to exclusive possession of the lot without establishing that they have met the requirements for a claim of adverse possession." *Id.* Similarly, in the circumstances here involving limited land inherently subject to the parties' overlapping and competing needs, the Judds' parking claim is in essence a claim to prevent the Bowens from exercising the rights inherent in their ownership, such as the rights to exclude and generally use and enjoy their property.

¶54   Finally, while the potential for conflict between the parties does not alone preclude the establishment of a prescriptive easement, the apparent impracticability in this case of managing the competing needs and desires of both parties to park in the same space given the physical constraints of the Driveway and surrounding areas underscores how unsuitable the legal concept

of a prescriptive parking easement is to the circumstances here. Significantly, the parties themselves have struggled to find a workable accommodation that would allow both sides to amicably use the Driveway for reasonable access *and* parking. They returned to the trial court to resolve recurring disputes, which resulted in ever greater constraints on the Bowens' use of a significant portion of their property, but even those constraints apparently have not managed to fully resolve the conflicts despite the court's best efforts. In essence, the intractability of the continuing conflicts between the parties arises from the attempt to impose a parking right that seems inherently incompatible with the Bowens' ownership rights in the underlying land and therefore beyond the proper scope of a prescriptive easement.

¶55    In sum, the rights inhering in the trial court's awarding of a parking easement in favor of the Judds effectively elevate the Judds' interest to one that more closely resembles a possessory interest rather than a simple right of temporary use. In particular, the parking right appears to grant the Judds a right to exclude both physically and conceptually the Bowens from use or enjoyment of the property at issue—a right that is typically only associated with possession. *Cf. Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 24, 321 P.3d 1054 (explaining that, among the rights associated with those who have "the control of a landowner in actual occupation of property," is "the right to exclude others from the property altogether"). The Judds' parking right therefore seems to create an imbalance in the proper weighing of interests between the two parties. *See Newell*, 550 P.2d at 179 ("Whenever there is ownership of property subject to an easement there is a dichotomy of interests, both of which must be respected and kept in balance."). As a result, we conclude that the trial court erred when it granted the Judds a prescriptive easement to park on, in the center of, and immediately around the Driveway.

¶56    Thus, the Judds may use the Driveway pursuant to the access easement the trial court awarded below, and the Bowens

must accommodate this use. But the Judds have not established a right to a prescriptive easement to park on the Bowens' land.

## II. Scope of the Prescriptive Easement

¶57    The Bowens also argue that the trial court exceeded its discretion regarding the scope of the easement it awarded. Because we have concluded that the Judds are not entitled to a parking easement, we address the question of scope only in relation to the Judds' prescriptive access easement.

¶58    "The general rule is that the extent of a prescriptive easement is measured and limited by its historic use during the prescriptive period." *Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998) (plurality opinion); *accord Kunzler v. O'Dell*, 855 P.2d 270, 275 (Utah Ct. App. 1993). This means that the "purpose for which the easement was acquired" limits both the extent of the easement right granted as well as the physical boundaries of the easement itself. *Whitesides v. Green*, 44 P. 1032, 1033 (Utah 1896); *accord Lunt v. Lance*, 2008 UT App 192, ¶¶ 30–32, 186 P.3d 978. The easement holder may not be granted a right "which places a greater burden on the [landowner]" than during the prescriptive period. *Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 164 (Utah 1946)). The physical extent of the easement is a "question of reasonable necessity." *Id.* at 158 (noting that while the "substance of the easement is shown by the usage," "the form [of the easement] . . . is a question of reasonable necessity"). And what is reasonably necessary to effectuate the prescriptive right "must be determined from a consideration of the facts and circumstances peculiar to the case." *Whitesides*, 44 P. at 1033; *accord Lance*, 2008 UT App 192, ¶¶ 30–32.

¶59    The Bowens argue that the trial court's orders relating to the access easement are inconsistent with the Judds' historic use and that the orders relating to the decorative border, the walkway, and the foliage exceeded its discretion.

A.    Access

¶60    In its order, the trial court ruled that the Judds had "proven their entitlement to a Prescriptive Easement for use of the Circular Driveway" and that the Judds and their visitors "hold a Prescriptive Easement to use the Circular Driveway for reasonable access . . . purposes associated with their usage of the Judd Property." In the same ruling, the court ordered that "[b]oth parties are . . . to refrain from blocking any users of the Judd Property and the Bowen property from ingress and egress on the Circular Driveway." The Bowens contend that these orders are inconsistent with the evidence presented at trial, which they characterize as indicating that the Judds used the Driveway only for access when the Bowens were not already parked on it and that, in recent years at least, the Bowens had "interrupted the Judds' use of the driveway whenever the Judds' use conflicted with their own," not the other way around. Accordingly, the Bowens argue that "at most, the Judds' easement is limited to using the Bowens' driveway for access to the Judd cabin when it does not interfere with the Bowens' use."

¶61    We disagree. Rather than address the scope of permissible use of the easement, the Bowens' argument seems to implicate the court's legal conclusion that the Judds' use of the Driveway for access purposes met the prescriptive easement element that the prior use had been continuous. But, as we explained above, *supra* ¶ 21, although there was some evidence that some Judd users on rare occasions were unable to use the Driveway for access purposes because a Bowen user was parked on it, there were other Judd users who testified that they used the Driveway for access every time they had need to. This was a conflict in the evidence the trial court was entitled to resolve, and the Bowens have not demonstrated that the trial court's findings that support its continuity conclusion were inadequate or clearly erroneous. And, as explained, the contentions regarding the Bowens' interruption of the Judds' parking do not implicate the access right, which is the only prescriptive easement the Judds

have acquired. Furthermore, because we have concluded that the Judds are not entitled to a parking easement, the only party whose use of the Driveway for access is at risk of hindrance by parking is the Judds, not the Bowens. The Judds are entitled only to use the Driveway as a temporary passage to reach and exit their property as they have in the past, which may, at times, require some accommodation on the part of the Bowens to ensure that the Judds are able to use and enjoy their access easement "to the fullest extent possible not inconsistent with the rights of [the Bowens]." *See North Union Canal Co. v. Newell*, 550 P.2d 178, 179 (Utah 1976).

¶62　As discussed above, prescriptive rights require a balance between the right of ownership and the limited use right, with respect to both. *Id.* The Bowens are therefore entitled to use and enjoy the Driveway "to the highest degree possible, not inconsistent with the easement." *See id.* This includes being able to park on the Driveway, but with the understanding that they will need to do so in a manner that still permits the Judds to reasonably exercise their right to use it for access, something that may, for example, require them to move parked vehicles on request when they block the Judds' access or otherwise make arrangements to ensure that they do not render the Judds unable to make reasonable use of their access easement. *See id.* at 180 (noting that an easement holder is entitled to "have the right to use and enjoy his easement to the fullest extent possible not inconsistent with the rights of the fee owner"); *see also id.* (concluding that a landowner does not need to obtain permission from the easement holder for installing certain improvements on land subject to an easement because the landowner may "use their property in any manner they please so long as they do not unreasonably restrict or interfere with the proper use of the plaintiff's easement"); *Utah-Idaho Sugar Co. v. Stevenson*, 97 P. 26, 27 (Utah 1908) (concluding that the easement holder may be subject to some reasonable inconvenience and delay in exercising his right of way, such as having to "unhook the team [of horses] on one side of the fence, drive the team

through the gateway, and rehitch it to the rope on the other side of the [two] fence[s]" installed by the landowner on the land subject to an easement located half a mile apart).

B.     Foliage, Walkway, and Border

¶63     The trial court found that in the past there had been "less vegetation" on the Driveway and that while witnesses "testified that cars historically parked in the center portion" of the Driveway, users were unable to park in the center any longer. It also found that, in addition to the Driveway, the Bowens once had a private driveway they used for parking "that went up the western side of the cabin," but that "[a]t some point, the Bowen Cabin users changed the . . . [private] driveway to a walkway with decorative rock outlining the path." At some point, the Bowens apparently lined the Driveway with a decorative rock border, as well. In the January 2015 order, the trial court clarified and added to its March 2014 order in response to disputes that had arisen between the parties about the scope of the Judds' prescriptive rights, mostly related to parking issues. The court ordered (1) that the Bowens "remove the decorative rock border from the circular driveway and . . . restore the walkway adjacent to the Bowen cabin to a parking spot as was used historically prior to 2008," even though that decorative border was "several feet back from the edge of [the Driveway]"; and (2) that the Bowens remove "recently-grown foliage," apparently referring to foliage and trees that had grown within the circle encompassed by the Driveway after the 1950s to 1970s when there had been "very little tree growth in [the Driveway]."

¶64     The Bowens argue that the orders relating to the decorative border, the walkway, and the foliage "place additional, and equally impermissible, burdens on the Bowens' property" because those orders "all granted the Judds rights in excess of those they enjoyed during the prescriptive period" and "prescriptive rights cannot include any right to prevent the Bowens from marking the outer boundary of the driveway on their own property" or "the right to force the Bowens to use a

particular part of their own property"—the rock-bordered walkway—"as a parking spot." They also argue that "the Judds cannot enjoy any prescriptive rights in keeping the vegetation on the Bowens' property in the same condition it was in the 1950s and 1970s."

¶65   We agree. These orders are inconsistent with the usage that forms the basis of the Judds' prescriptive right—using the Driveway for ingress and egress purposes. Rather, the court's orders seem to be focused on resolving disputes over parking; neither the walkway nor the decorative border impedes the Judds from using the Driveway for access purposes. Indeed, the trial court made no findings or conclusions to suggest that removal of the decorative rock border or the walkway improvements was reasonably necessary to permit the Judds to use the Driveway for access. *See Big Cottonwood Tanner Ditch Co. v. Moyle*, 174 P.2d 148, 158 (Utah 1946) (stating that the standard for establishing the dimensions of a prescriptive easement is that which is of "reasonable necessity" to permit the limited use acquired as a prescriptive right). And the Judds have not directed us to any evidence that demonstrates such limitations would be reasonably necessary to enable their limited rights of access to their cabin. Indeed, it is difficult to see how they could be, considering that the evidence describes both the rock border and the walkway as outside of the Driveway's physical track. Further, while the conversion of the Bowens' prior cabin-side parking strip to a walkway reduced the Bowens' own dedicated parking, with the result that Bowen cabin users would more likely use the Driveway for parking, the Bowens' ownership rights permit them to park on the Driveway so long as they do not unreasonably interfere with the Judds' right of access to their property. *See Newell*, 550 P.2d at 179 ("[I]t is to be realized that the owner of the fee title, because of his general ownership, should have the use and enjoyment of his property to the highest degree possible, not inconsistent with the easement."). In other words, the Bowens may choose to retain the walkway and park on the Driveway under their rights of "general ownership," so

long as they do not unreasonably interfere with the Judds' ability to use the Driveway to access their property, as we have discussed above.

¶66 Finally, the trial court's order that the foliage in the vicinity of the Driveway, including within the circle, be returned to its 1950s to 1970s state seems largely directed at freeing up additional parking area for the Judds' use consistent with the court's declaration of a parking easement in their favor. Because we have determined that no prescriptive parking easement arose, there is no further basis for this order to the extent it implicates parking concerns. And in this regard, it is not apparent to what extent, if any, the court's foliage order may have been concerned with the Judds' ability to use their right of access over the Driveway. There does not seem to be any evidence, for example, that since the 1970s the growth of foliage has prevented the Judds from using the Driveway to access their property; to the contrary, testimony at trial established that both the Judds and the Bowens have continued to use the Driveway for access purposes since the 1970s, even with the increased foliage. Nevertheless, given the way that conflict over the common use of the Driveway has evolved in more recent history, it would not be unreasonable for the trial court to impose some restraints on the growth of foliage aimed at preventing interference with the Judds' ability to drive over the Driveway for purposes of reasonable access to their property, for example, in order to prevent encroaching foliage that might damage passing vehicles or interfere with their reasonable passage. *See Lunt v. Lance*, 2008 UT App 192, ¶ 31, 186 P.3d 978 (noting that the dimensions of a prescriptive right are not limited to a historic beaten path, but are instead dictated by reasonable necessity). Rather, some requirement that the Bowens maintain the foliage bordering the Driveway so that it does not unreasonably interfere with safe passage could be a basis for resolution, but we will leave the details to the trial court, which is better suited to resolve them than we are. Such an order should be designed to preserve the Judds' limited right to use

the Driveway for access and balance that limited use against the Bowens' superior ownership right.

¶67    Accordingly, we conclude that the trial court exceeded its discretion in ordering restoration of the walkway on the Bowens' property to a driveway and removal of any portion of the decorative border or any foliage that does not impede the Judds' reasonable access over the Driveway.

CONCLUSION

¶68    We affirm the trial court's award to the Judds of a prescriptive easement over the Driveway for the purpose of access to their cabin. As the trial court ordered, the Bowens must refrain from actions that would unreasonably interfere with that easement. However, we reverse the court's determination that the Judds are entitled to a prescriptive easement for parking on the Bowens' property. Under the circumstances of this case, we conclude that the doctrine of prescriptive easement is inconsistent with the parking right asserted by the Judds and with the Bowens' ownership rights.

¶69    We also vacate the court's orders that the Bowens remove the decorative rock border and the walkway as those orders do not appear to be reasonably necessary to the Judds' enjoyment of their access easement. Finally, we vacate the court's order to cut back the foliage to the growth consistent from the 1950s to 1970s. Rather, the Bowens must keep the foliage trimmed so that it does not unreasonably interfere with the Judds' access easement.

¶70    We recognize that there may be some need to further address in the trial court the details of the parties' interactions to take into account the practical implications of our decision, and we remand the case for further proceedings consistent with this opinion.

_____

*Judd v. Bowen*

ORME, Judge (concurring in part and dissenting in part):

¶71 I concur in the court's opinion except for its treatment of parking. Under the circumstances, the Judds' right to park on the Driveway was not akin to a possessory or ownership interest in land. It was, instead, a transitory, occasional intrusion. At least that is what the evidence established, and to the extent the trial court gave the Judds a more expanded parking right than was warranted by their historical usage—i.e., the right to park on the Driveway so long as it did not impede the Bowens' use of the Driveway and to move any obstructing vehicles upon the Bowens' request—the court must amend its decree accordingly.

¶72 By the same token, in my view the trial court should revisit its subsequent decree and scale back its directives to the Bowens so that the decree requires only the least intrusive restrictions necessary to preserve the limited parking right enjoyed over the decades by the Judds. This surely will not include the mandate to return the Bowens' decorative walkway to its prior condition as a parking spot reserved for the Bowens' use, but it may well include limited directions vis-à-vis foliage and the rock wall if those effectively deprive the Judds of their historical ability to park on the Driveway in such a way as to minimize the Bowens' need to ask them to move.

————